1

2

3              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF CALIFORNIA
4

5 | ENNS PONTIAC, BUICK, & GMC, *et al.*, | 1:07-CV-1043 OWW DLB

6 |                          Plaintiffs, | ORDER DENYING DEFENDANT PEARCE'S MOTION TO DISMISS (DOC. 28) AND GRANTING

7 |        v. | PLAINTIFFS' MOTION FOR LEAVE TO SUBMIT ADDITIONAL EVIDENCE

8 | ORELIA FLORES, *et al.*, | (DOC. 49).

9 |                          Defendants. |

10

11                     I.   **INTRODUCTION**

12      This case concerns the alleged release of various hazardous

13 substances, namely solvents used in the dry cleaning industry,

14 into a groundwater plume underlying part of Reedley, California.

15 Before the court for decision are (1) Defendant John Pearce's

16 ("Pearce") motion to dismiss the first amended complaint ("FAC")

17 on the ground that the claims asserted therein are time-barred;

18 and (2) Plaintiffs' motion to supplement the record.

19

20                     II.   **BACKGROUND**

21      The FAC includes two federal claims for (1) recovery of

22 "response" costs under the Comprehensive Environmental Response,

23 Compensation, and Liability Act ("CERCLA") §§ 107(a)(1-4)(B), and

24 (2) declaratory relief under federal law, as well as five

25 additional state law claims for (3) negligence per se,

26 (4) negligence, (5) public and private nuisance, (6) trespass,

27 and (7) equitable indemnity, and (8) declaratory relief under

28 state law.  (Doc. 13, filed Nov. 7 2007.)

                              1

1    The FAC sets forth the following general background
2  information.  Plaintiffs own real property located at 1319 G.
3  Street, Reedley, California ("Plaintiffs' Site").  (FAC ¶2.)
4  Prior to Plaintiffs taking ownership of 1319 G. Street, Mabel and
5  Herbert Lee[1] (the "Lee Defendants") owned and/or operated a dry
6  cleaning business at that location from approximately the 1940s
7  through the 1970s.  (FAC ¶4.)  Orelia Florez and Sieto Yamaguchi[2]
8  (the "Flores/Yamaguchi" defendants) owned and/or operated real
9  property at 1340 G. Street, Reedley, California, which is across
10  the street from Plaintiff's Site.  (FAC ¶¶ 4, 7.)  Finally, John
11  Pearce ("Pearce") and Patty and Louie Martinez ("Martinez") "each
12  owned and/or operated real property nearby and/or adjacent to the
13  Plaintiffs' Site."  (FAC ¶4.)  The FAC alleges that the
14  properties either currently or previously owned by these
15  Defendants "caused Plaintiffs and Plaintiffs' Site environmental
16  contamination."  (*Id.*)

17    Plaintiffs allege that Defendants and Defendants' properties
18  "generated disposed of or released ... hazard[ous] substances or
19  wastes that caused contamination and pollution of structures,
20  soils, subsoils, surface water and groundwater at and in the
21  vicinity of the Plaintiffs' Site (both on-site and off-site)
22  through the handling, generation, usage, storage, disposal of
23  and/or release of hazardous substances at, onto and from the
24  Plaintiffs' Site and Defendants' Sites."  (FAC ¶5.)

25  ───────────────
26    [1]    Herbert Lee is deceased; his estate is now the named
   defendant.

27    [2]    Sieto Yamaguchi is deceased, and his estate is named in
28  his place.

1    The FAC's allegations regarding the nature of the
2  contamination at issue are very generic, alleging that
3  Defendants, beginning in the 1940s, while operating either on
4  Plaintiffs' Site or other sites, released hazardous substances
5  including chlorinated hydrocarbon compounds ("CHCs").  (FAC ¶¶
6  37-38.)  These CHC releases allegedly caused and contributed to
7  the contamination of soil and groundwater underlying Plaintiffs'
8  Site, Defendants' properties, and surrounding properties.  (FAC
9  ¶37.)

10    In the First Claim for Relief, for recovery of response
11 costs under CERCLA §§ 107(a)(1-4)(B), Plaintiffs allege that they
12 "have incurred, and will continue to incur, substantial Response
13 Costs ... to fully characterize the Plaintiffs' Site, including,
14 but not limited to, soil sampling; installation of groundwater
15 monitoring wells; sampling such wells and having all samples
16 analyzed...."  (FAC ¶42.)  In addition, Plaintiffs anticipate
17 that they will incur additional costs to address existing and
18 future groundwater contamination.  (*Id.*)  The FAC specifically
19 alleges that Defendants "caused and continue to cause Plaintiffs
20 to incur Response Costs on their property and for the underlying
21 groundwater."  (FAC ¶49.)  The FAC contains no further details
22 about the nature of Defendants' releases or contribution to any
23 contamination.

24    Defendant Pearce moves to dismiss the FAC pursuant to Fed.
25 R. Civ. P. 12(b)(6), primarily on the ground that the claims are
26 time-barred by the applicable statute of limitations.  (Doc. 28,
27 filed Mar. 20, 2008.)

28

3

1                          III.   **STANDARD OF REVIEW**

2          Federal Rule of Civil Procedure 12(b)(6) provides that a

3     motion to dismiss may be made if the plaintiff fails "to state a

4     claim upon which relief can be granted."  The question before the

5     court is not whether the plaintiff will ultimately prevail,

6     rather, it is whether the plaintiff could prove any set of facts

7     in support of his claim that would entitle him to relief.  *See*

8     *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint

9     should not be dismissed unless it appears beyond doubt that

10    plaintiff can prove no set of facts in support of his claim which

11    would entitle him to relief."  *Van Buskirk v. CNN, Inc.*, 284 F.3d

12    977, 980 (9th Cir. 2002).

13         In deciding whether to grant a motion to dismiss, the court

14    "accept[s] all factual allegations of the complaint as true and

15    draw[s] all reasonable inferences" in the light most favorable to

16    the nonmoving party.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th

17    Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983

18    (9th Cir. 2002).  A court is not "required to accept as true

19    allegations that are merely conclusory, unwarranted deductions of

20    fact, or unreasonable inferences."  *Sprewell v. Golden State*

21    *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

22         A 12(b)(6) motion may be an appropriate vehicle for a party

23    to raise a statute of limitations defense.  *Jablon v. Dean Witter*

24    *& Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  A motion to dismiss

25    may raise a limitations defense when the statute's running is

26    apparent on the complaint's face.  *Id*. at 682 ("When a motion to

27    dismiss is based on the running of the statute of limitations, it

28    can be granted only if the assertions of the complaint, read with

                                   **4**

1  the required liberality, would not permit the plaintiff to prove

2  that the statute was tolled.").  If the limitations defense does

3  not appear on the complaint's face and the trial court accepts

4  matters outside the pleading's scope, the defense may be raised

5  by a motion to dismiss accompanied by affidavits.  *Id*.  If the

6  limitations defense is not apparent on the complaint's face and

7  the motion to dismiss is not accompanied by acceptable

8  affidavits, an appropriate summary judgment motion may be

9  employed.  *Id*.

10

11                    IV.  <u>EVIDENTIARY ISSUES</u>

12      Here, the limitations defense is not apparent on the face of

13  the complaint, as the FAC does not allege the timing of either

14  the alleged contamination or of the recovery activities for which

15  indemnification is sought.  The complaint does not clearly

16  explain the relationship between the parties and the relationship

17  of the various Defendants to the groundwater contamination

18  problems necessitating the recovery activities.  Rather than

19  challenging the face of the complaint, Pearce introduces a number

20  of facts through the declaration of counsel.  (Doc. 30.)  Under

21  *Jablon*, the district court is permitted to consider affidavits

22  which accompany a motion to dismiss on statute of limitations

23  grounds.  In the interest of fairness, the district court will

24  also consider related affidavits presented by Plaintiffs

25  regarding the statute of limitations issue.

26      Specifically, along with his motion to dismiss, Pearce

27  submits two letters addressed to Plaintiffs from the California

28  Regional Water Quality Control Board, Central Valley Region

                                5

1  ("Water Board"), dated July 14, 1997 and May 8, 2007,

2  respectively.  These will be considered under *Jablon* as

3  affidavits relevant to the motion to dismiss.[3]

4       Along with Plaintiffs' opposition to the motion to dismiss,

5  Plaintiffs' counsel submitted a September 14, 2006 letter from

6  the Water Board to Plaintiffs.  As the district court will

7  consider matters outside the pleadings presented by Pearce, it is

8  appropriate to consider similar evidence submitted by Plaintiffs.

9       Plaintiffs also provide a May 2, 2008 letter to Plaintiffs'

10  counsel from the Water Board.  Plaintiffs' counsel received this

11  letter <u>after</u> filing opposition to Pearce's motion to dismiss.

12  Accordingly Plaintiffs move for leave to supplement the record

13

14       [3]   Plaintiffs object to the admission of these letters on
   the ground that Pearce is attempting to bring a motion for
15  summary judgment under the guise of a motion to dismiss.  This
   objection is DENIED, as the admission of such evidence is
16  permitted under *Jablon*.  Plaintiffs do not object to the
   admission of these letters on hearsay grounds.  Nevertheless,
17  Pearce, assuming that such an objection was raised, attempts to
   argue that the letters are not hearsay by citing the California
18  Rules of Evidence, which are not relevant to the admissibility of
   evidence in Federal Court, even if the claim is brought under
19  state law.  As Plaintiffs did not object to the letter on hearsay
   grounds, it is not necessary to address Pearce's response in any
20  further detail.
        In addition, Pearce's counsel made several statements in her
21  affidavit, (Doc. 31):  (a) "I personally reviewed documents
   maintained at the Water Board and have had several conversations
22  in which we discussed the history of the site identified by the
   Water Board as Property with Assessors Parcel Number 368-27-202,
23  Reedly, Fresno County"; (b) "I personally learned from the Water
   Board documents that the APN for 1319 G Street is 368-272-02";
24  and (c) "I personally learned from Chicago Title company that APN
   368-272-02 was purchased by Enns from Lee in 1979."  As
25  Plaintiffs correctly point out in their objections to this
   evidence, (Doc. 40), these are hearsay statements, not admissible
26  for the truth of the matters asserted.

27

28

                                  6

1  with this "newly-discovered" evidence.  The Yamaguchi Estate

2  opposes introduction of the letter on two grounds.  First, on the

3  general principle that courts generally "should consider only the

4  pleadings" on a 12(b)(6) motion.  (*See* Doc. 56 at 2.)  But, given

5  that Plaintiffs have introduced a host of documents with their

6  motion to dismiss, this objection is OVERRULED.  It is

7  appropriate to permit the other party to submit evidence as well.

8      The Yamaguchi Estate's second objection is that the letter

9  is "superfluous" and "unnecessary" because the "court presumes

10  everything [Plaintiffs'] claim [to be] true anyway."  (Doc. 56 at

11  3.)  The Yamaguchi Estate maintains that "if Plaintiffs have

12  properly pled their complaint, there is no need for the evidence.

13  If the Plaintiffs' have not, than the proper course is to amend

14  the complaint."  (*Id.*)  But, the Yamaguchi Estate misunderstands

15  Fed. R. Civ. Pro. 8, which, with a few narrow exceptions not

16  applicable here, requires only a "a short and plain statement of

17  the claim showing that the pleader is entitled to relief...."

18  *Jablon*, 614 F.2d at 682, establishes the procedure applicable

19  when a statute of limitations defense is raised based on matters

20  outside the pleadings, allowing statute of limitations issues to

21  be resolved without requiring re-pleading.  Plaintiffs' motion to

22  supplement the record with the May 2, 2008 record is GRANTED.[4]

23

24      [4]  On July 7, 2008, Pearce also submitted an opposition to
the consideration of the May 2, 2008 letter.  This submission is
25  untimely, as Defendants were ordered to submit oppositions to
Plaintiffs' motion to supplement the record on or before June 30,
26  2006.  (Doc. 55.)  Pearce has presented no good cause for his
untimely filing.  Therefore, the filing, which also contains
27  improper additional argument regarding the underlying motion to
28  dismiss, will not be considered.

1    The Yamaguchi Estate submitted an additional letter, dated
2    June 2, 2008, as part of its opposition to the introduction of
3    the May 2, 2008 letter.  This letter, which the Yamaguchi Estate
4    argues undermines the value of the May 2, 2008 letter, will also
5    be considered.

6        In sum, the July 14, 1997, September 14, 2006, May 8, 2007,
7    May 2, 2008, and June 2, 2008 letters will be considered to
8    determine whether it appears beyond doubt that Plaintiffs can
9    prove no set of facts in support of the timeliness of their
10   claims.

11
12                    **V.  DISCUSSION**

13   **A.   Claim for Recovery of Response Costs Under CERCLA §§
14        107(a)(1-4)(B).**

        **1.   Applicable Legal Standards.**
15
16       Pearce moves to dismiss Plaintiffs' claim for recovery of
17   response costs under CERCLA §§ 107(a)(1-4)(b) on the ground that
18   the claim is time-barred.  The parties do not agree upon the
19   applicable limitations period.  Pearce correctly articulates the
20   general rule that "[o]rdinarily, when a federal statute contains
21   no limitations provision, a federal court should apply the 'most
22   appropriate' statute of limitations provided by state law, unless
23   there is a 'relevant' federal statute of limitations."  *Sierra
24   Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1521 (9th Cir.
25   1987).  Here, CERCLA contains a relevant limitations period, set
26   forth in Title 42 of the United States Code, section 9613(g)(2):[5]

27   _____

28       [5]   Pearce's contrary assertion that California's
     three-year statute of limitations for actions "for trespass upon
     or injury to real property," Cal. Code Civ. Pro. § 338(b),

                              8

1          (2) Actions for recovery of costs

2          An initial action for recovery of the costs referred to
           in section 9607 of this title must be commenced--
3
4          (A) for a removal action, within 3 years after
           completion of the removal action, except that such cost
           recovery action must be brought within 6 years after a
5          determination to grant a waiver under section
           9604(c)(1)(C) of this title for continued response
6          action; and

7          (B) for a remedial action, within 6 years after
           initiation of physical on-site construction of the
8          remedial action, except that, if the remedial action is
           initiated within 3 years after the completion of the
9          removal action, costs incurred in the removal action
           may be recovered in the cost recovery action brought
10         under this subparagraph.

11     It is not critical to determine at this time whether the

12 planned activities at Plaintiffs' Site are "removal" actions

13 triggering the three-year statute of limitations, or "remedial"

14 actions triggering the six-year limitations period, because

15 Plaintiffs maintain that their CERCLA claim satisfies either

16 requirement because the period has not yet begun to run.  For the

17 purposes of this analysis, it is reasonable to assume that the

18 shorter, three-year statute of limitations under § 9613(g)(2)(A)

19 applies.

20     The next question is how to determine the commencement date

21 (i.e., the date upon which the limitations period begins).[6]  For

22     _____

23 applies to Plaintiff's federal CERCLA claim for recovery of
   removal costs is without merit.
24
25     [6]    Pearce points to 42 U.S.C. § 9658(a)(1), which
   provides:
26
27     (1) Exception to State statutes

28     In the case of any action brought under State law for
   personal injury, or property damages, which are caused or
   contributed to by exposure to any hazardous substance, or

                              9

1   a claim brought under CERCLA for recovery of response costs, all

2   removal actions performed at a single site will be considered one

3   removal action, triggering the three-year limitations period <u>only</u>

4   <u>after the entire removal phase is complete</u>. *See Cal. Dept of*

5   *Toxic Substances Control v. Alco Pac.*, 308 F. Supp. 2d 1124,

6   1132-33 (C.D. Cal. 2004).

7           2.  <u>Analysis</u>.

8       Pearce asserts that the limitations period commenced, at the

9   very latest, when Plaintiffs received the July 14, 1997 letter

10   from the Water Board. That letter concerns Plaintiffs' final

11   remediation plan for the cleanup of a petrochemical release from

12   a 550-gallon underground gasoline storage tank ("UST"). That

13   tank failed an integrity test in 1987 and was subsequently

14   removed. An assessment of the site revealed that groundwater in

15   three monitoring wells (MW-1, MW-2, and MW-3), installed in 1989,

16   was degraded with petroleum-based contaminants, including

17   gasoline (TPH-g), and various related compounds like benzene,

18   toluene, ethylbenzene, and xylenes (BTEX).

19   _____

20       pollutant or contaminant, released into the environment from

21       a facility, if the applicable limitations period for such
        action (as specified in the State statute of limitations or

22       under common law) provides a commencement date which is
        earlier than the federally required commencement date, such

23       period shall commence at the federally required commencement

24       date in lieu of the date specified in such State statute.

25   In addition to totally misconstruing this statutory language, a
  failing that is discussed below, Pearce does not recognize that §

26   9658(a)(1) applies only to claims "brought under State law for
  personal injury, or property damages." Therefore, it is

27   inapplicable to this claim, brought directly under CERCLA for

28   recovery of response costs.

1    In 1991, a vapor extraction system was installed at the site

2    to remediate the petroleum-impacted soils.   Concentrations of the

3    volatile organic compounds (VOCs) in the extracted gas was

4    reduced from several hundred ppm in 1991 to below 1 ppm in 1993.

5    The vapor extraction system was removed in 1994.

6    Three additional monitoring wells (MW-4, MW-5, and MW-6)

7    were installed adjacent to the site to determine the spread of

8    the petroleum release.   Petroleum-based compounds were found in

9    all three wells.   In addition, samples from the wells were tested

10   for a variety of solvents, not necessarily associated with the

11   petroleum release.   Samples from MW-3 and MW-5 revealed the

12   presence of cis-1,2-dichloroethylene, trans-1,2-dichloroethylene,

13   1,2-dicloropropane, 1,2-dichloroethane (EDC), tetrachloroethene

14   (PCE), and trichloroethene (TCE).   The Water Board's letter

15   indicated that "[t]hese solvents are believed to have originated

16   from a former dry cleaning operation southeast and adjacent to

17   the site."

18   In 1996, three additional monitoring wells (MW-7 (north of

19   MW-3) and MW-8 and MW-9 (south and east of MW-5)) were installed

20   to further define the spread of impacted groundwater.   The

21   results indicated only trace amounts of petroleum-based

22   contaminants in the outlying wells.   In contrast, "there were

23   significant increases" of all the petrochemical contaminants in

24   MW-3, one of the wells on Plaintiffs' Site.   The Water Board then

25   proceeded to critique Plaintiffs' plan to remediate the petroleum

26   hydrocarbons from subsurface soils.   The 1997 letter did not say

27   anything about remediation of the solvent contamination.

28   Plaintiffs assert that the FAC concerns the solvent release

11

1  mentioned in passing in the 1997 letter, <u>not</u> the petrochemical

2  release that was discussed in great detail.[7]   Pearce does not

3  dispute this, but instead argues that the 1997 letter's statement

4  that "[t]hese solvents are believed to have originated from a

5  former dry cleaning operation southeast and adjacent to the

6  site," put Plaintiffs on notice of the possibility that Defendant

7  Pearce, who owned and/or operated the property across the street

8  from Plaintiffs Site, might have contributed to the solvent

9  release.[8]

10      The problem with Pearce's argument is that, as of 1997,

11  Plaintiffs had suffered no "injury" with respect to their claim

12  for reimbursement for recovery costs in connection with the

13  solvent release, because they had not been required to perform

14  any recovery activities with respect that release.  *See Cal. Dept*

15  *of Toxic Substances Control v. Alco Pac.*, 308 F. Supp. 2d at

16  1132-33 (holding that the limitations period for a cause of

17

18      [7]   The complaint does hint at this distinction, noting
19  that the release(s) of concern involved "sudden and accidental
    spills and/or other Releases includ[ing] chlorinated hydrocarbon
20  compounds."  (FAC at 36.)  The petrochemicals that were the
    subject of the cleanup activities discussed in the 1997 letters,
21  are not chlorinated hydrocarbon compounds ("CHCs"), while the
    dry-cleaning solvents mentioned but not thoroughly discussed are
22  CHCs.  Plaintiffs's allegations could have been clearer, but
    perfect clarity is not required by Rule 8.
23

24      [8]   At oral argument, Pearce's counsel also argued that the
    entire complaint is flawed because it did not contain any facts
25  showing that Pearce had anything to do with the alleged
    contamination.  This is not a basis upon which a motion to
26  dismiss may be granted.  As explained above, subject to a few
    narrow exceptions not applicable here, Fed. R. Civ. Pro. 8
27  requires only a "a short and plain statement of the claim showing
    that the pleader is entitled to relief...."
28

1   action for recovery of response costs commences when the cleanup
2   activities have been completed).

3       The other letters indicate that Plaintiffs have yet to
4   complete response activities with respect to the solvent release.
5   The September 14, 2006 letter notifies Plaintiffs about the Water
6   Board's concern that "a review of city directories" indicates
7   that a parcel of land owned by Plaintiffs on G Street was
8   previously occupied by a dry cleaning facility and "is considered
9   a potential source of PCE in groundwater."  The letter then
10  explains that PCE is used as a dry cleaning agent and that
11  studies have shown that PCE handling and disposal practices at
12  dry cleaning facilities can lead to releases of the solvent into
13  groundwater.  The Water Board also explains that "[g]roundwater
14  impacted by VOCs has been detected in groundwater samples
15  collected from MW-5, located onsite, which was originally
16  installed to monitor petroleum hydrocarbons originating from an
17  adjacent property," namely Plaintiffs' other property, which
18  houses the car dealership.  The Water Board states:

19              We are not aware of other potential nearby PCE sources
                hydraulically upgradient of your facility.  Therefore,
20              we believe the source of PCE in groundwater beneath the
                subject property is from historical spills at the site
21              or discharges of PCE-laden wastewater from an onsite
                facility to the sanitary sewer system or septic system.
22
23  The letter then directs Plaintiffs to submit a workplan to
24  "investigate the location and source of the PCE" on the property.

25      This 2006 letter is the first record evidence indicating
26  that Plaintiffs' property might be a source of PCE.  Moreover, in
    2006, the Water Board did not suggest that other dry cleaning
27  establishments in the area might be contributing to the solvent
28

1   plume.  The letter simply instructs Plaintiffs to submit a
2   workplan to further investigate the situation.

3        The May 8, 2007 letter indicates that while the
4   "investigation and remedial action is nearly complete for the
5   underground storage tank (UST) release site" remediation was not
6   yet complete for the "solvent release at the site."  The letter
7   demanded that Plaintiffs submit by June 8, 2007 an "overdue work
8   plan proposing tasks to investigate the source of VOCs[9]
9   [presumably referring this time to the solvent release] on the
10  subject property and to assess the lateral and vertical extent of
11  VOCs in groundwater."

12       Pearce's argument that Plaintiffs "completed a removal
13  action by 1994" is inapposite.  (Doc. 43 at 7.)  That removal
14  action concerned the petrochemical release from the underground
15  storage tank.  Pearce points to no authority that supports the
16  proposition that Plaintiffs had any obligation under CERCLA to
17  even begin removal actions concerning the solvents prior to the
18  Water Board's 2006 letter.

19       Because the evidence before the court indicates that the
20  statute of limitations has yet to begin to run, Pearce's motion
21  to dismiss Plaintiffs' CERCLA claim on the ground that it is
22  time-barred is DENIED.

23

24  _____

25       [9]     The Water Board, confusingly, uses the term volatile
26  organic compound ("VOC") to refer both to th petrochemical
    contaminants discussed in the 1997 letter and to the solvent
27  contaminants discussed in the 2007 letter.  Presumably, this is
    because both sets of chemicals fall under the general rubric of
28  VOCs.

                              14

1

2          **B.    State Law Claims for Negligence Per Se, Negligence,
                   Public and Private Nuisance, and Trespass.**

3          A more difficult issue is raised by Pearce's motion to

4     dismiss Plaintiffs' state law negligence per se, negligence,

5     public and private nuisance, and trespass claims on the ground

6     that all are subject to a three-year statute of limitations

7     period that has expired.

8          For state law claims for damages from exposure to hazardous

9     wastes, CERCLA provides that the commencement date is specified

10    by the state statute of limitations for such claims, unless the

11    "federal commencement date" would result in a later commencement

12    date.  *See* 42 U.S.C. § 9658(a)(1).[10]  The federal commencement

13
          [10]    42 U.S.C. § 9658(a)(1) provides in full:
14

15         **(1) Exception to State statutes**

16         In the case of any action brought under State law for
           personal injury, or property damages, which are caused or
17         contributed to by exposure to any hazardous substance, or
           pollutant or contaminant, released into the environment from
18         a facility, if the applicable limitations period for such
           action (as specified in the State statute of limitations or
19         under common law) provides a commencement date which is
           earlier than the federally required commencement date, such
20         period shall commence at the federally required commencement
           date in lieu of the date specified in such State statute.
21

22    Pearce totally misconstrues this statutory language, asserting it
      "provides that the 'federally required commencement date' shall
23    be the date that the state's applicable statute of limitations
      shall commence for an action under state law for property damages
24    caused by contamination from hazardous substances if that federal
      date is later than the corresponding date under state law."
25    (Doc. 29 at 5.)  In fact, § 9658(a)(1) actually calls for
      application of the state commencement date only if it results in
26    a date that is equal to or later than the federally required
      commencement date.
27

28

                                    15

date is "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages...were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." § 9658(b)(4)(A).  Under state law, the state commencement date is determined in a very similar manner. In cases of trespass or injury to real property, California applies the discovery rule, which:

> ...assumes that all conditions for accrual of the action exist, but postpones commencement of the limitation period until the plaintiff discovers or should have discovered the facts essential to his cause of action.  Under this rule, possession of presumptive as well as actual knowledge will commence the running of the statute.  A plaintiff is charged with presumptive knowledge so as to commence the running of the statute once he or she has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation.

*Wilshire Westwood Assoc. v. Atl. Richfield Co.*, 20 Cal. App. 4th 732, 740 (1993)(internal citations and quotations omitted).

The Ninth Circuit has held that the federal standard (i.e., the federally required commencement date) is "more generous than California's [discovery rule] in tolling the statute of limitations when a plaintiff's discovery of her claims is delayed," and, therefore, "the federal commencement date preempts California's discovery rule." *O'Connor v. Boeing N. Am., Inc.,* 311 F.3d 1139, 1146-47 (9th Cir. 2002).  The *O'Connor* court provided additional guidance:

> Under both federal and California law, the discovery rule provides that a limitations period does not commence until a plaintiff discovers, or reasonably could have discovered, his claim. [*Bibeau v. Pac. N.W. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir.1999), amended by 208 F.3d 831 (9th Cir.2000)]; *accord Norgart v. Upjohn Co.*, 21 Cal.4th 383 (1999).

16

Because "[t]he plaintiff must be diligent in discovering the critical facts" a plaintiff who did not actually know of his claim will be barred "if he should have known [of it] in the exercise of due diligence." *Bibeau*, 188 F.3d at 1108; *accord Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103 (1988). A plaintiff is "held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." *Jolly*, 245 Cal.Rptr. 658. This concept of constructive notice is captured by the maxim that "the means of knowledge are the same thing in effect as knowledge itself." *Wood v. Carpenter*, 101 U.S. 135, 143 (1879).

In requiring actual or constructive knowledge of the cause of an injury before Plaintiffs can be deemed to be on notice of their claims, § 9658 invokes a formulation of the discovery rule that has been commonly applied in the federal courts. A plaintiff knows or reasonably should know of a claim when he or she knows "both the existence and the cause of his injury." *See United States v. Kubrick*, 444 U.S. 111, 113, 122 (1979) [].

California courts have formulated the standard for determining when a plaintiff is on inquiry notice in a way that is fundamentally distinct from the federal standard set forth in § 9658. Under California law, a plaintiff discovers a claim when the plaintiff "suspects or should suspect that her injury was caused by wrongdoing." *Jolly*, 245 Cal.Rptr. 658; *Norgart*, 87 Cal.Rptr.2d 453 []. By its terms, § 9658 sets a later date for commencement of the limitations period, tolling the start of the period for filing claims beyond the date that a plaintiff suspects the cause of injury until the time that he or she knows or reasonably should have known of that cause.

Several federal courts have distinguished the federal knowledge standard from a standard that commences a limitations period when a plaintiff merely suspects the cause of injury, reasoning that the federal standard requires more than suspicion alone. *See, e.g., Evenson v. Osmose Wood Preserving Co.*, 899 F.2d 701, 705 (7th Cir.1990) (stating that "we disagree with defendants that a layperson's mere suspicion, even when coupled with the start of an investigation, automatically triggers the statute"); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985) ("The statute cannot start running when the plaintiff merely knows or should know that there is a suspected link between a particular substance and cancer in general." (emphasis added)); *Ballew v. A.H. Robins Co.*, 688 F.2d 1325, 1327 (11th Cir.1982) (holding that evidence of "a suspicion of a causal link between [plaintiff's] infection and

the Dalkon shield" was insufficient to commence the limitations period).

Conversely, under the California discovery rule, "the plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof." *Norgart*, 87 Cal.Rptr.2d 453.  The California Supreme Court disapproved an interpretation of the discovery rule that "require[s] that a plaintiff must do more than suspect a factual basis for the elements of a cause of action in order to discover the cause of action." *Id.* at 97 n. 8 (disapproving *Bristol-Myers Squibb Co. v. Superior Court*, 32 Cal.App.4th 959, 38 Cal.Rptr.2d 298 (1995)).

<u>In sum, we reject an interpretation of the federal discovery rule that would commence limitations periods upon mere suspicion of the elements of a claim.</u> Under the circumstances presented here, such a standard would result in "the filing of preventative and often unnecessary claims, lodged simply to forestall the running of the statute of limitations." *McGraw v. United States*, 281 F.3d 997, 1003 (9th Cir.2002), amended by 298 F.3d 754 (9th Cir.2002). We seek to forestall such a "legal cascade." *Id*. Because application of California's suspicion standard would result in an earlier commencement date for the one-year limitations period than the federal commencement date, we hold that the federal discovery rule under § 9658 preempts the California rule.

*O'Connor*, 311 F.3d at 1147-48 (parallel citations omitted)(emphasis added).

The key question is on what date Plaintiffs knew of or should have known of their claim.  The question then becomes whether the 1997 letter put Plaintiffs on notice of Defendant Pearce's participation in any negligence per se, negligence, public and private nuisance, and/or trespass.  The letter indicates that "[t]hese solvents are believed to have originated from a former dry cleaning operation southeast and adjacent to the site."

Plaintiffs argue that "[a]lthough [the] 1997 letter involving the UST cleanup informed Plaintiffs of the presence of

18

1  solvents on the UST site, the former dry cleaning business

2  identified as potentially responsible for that contamination was

3  the one adjacent to the UST site, and was distinct from the

4  regional groundwater plume at issue."   (Doc. 38 at 11.)

5  Plaintiffs maintain, therefore, that they had "no reason to

6  suspect at the time that any contamination involved in this

7  separate cleanup was the result of Defendants' activities."

8  (*Id.*)[11]

9       Pearce responds that, given the information in the 1997

10 letter, "[a] reasonable consultant would have checked the

11 neighborhood for contributing chemicals.  Plaintiffs should have

12 checked for other potential sources that were adjacent to

13 Plaintiffs' properties, for example, Jack's Refrigeration, a

14 sheet metal fabrication shop and a blacksmith's shop, each of

15 which uses chemical solvents in their business, not to mention

16 other dry cleaners it he vicinity."  (Doc. 42 at 3-4.)

17              1.   <u>Continuing Nuisance/Trespass</u>.

18      Whether or not Plaintiffs were put on notice by the 1997

19 letter, Plaintiffs argue that they can nevertheless maintain

20 causes of action for continuing nuisance and trespass.

21      "Where a nuisance is of such character that it will

22 presumably continue indefinitely it is considered <u>permanent</u>, and

23 the limitations period runs from the time the nuisance is

24 created."  *Phillips v. City of Pasadena,* 27 Cal. 2d 104 (1945).

25 "On the other hand, if the nuisance may be discontinued at any

26

27      [11]   No map is provided by either party to clarify the

28 relationship between these parcels of real property.

                              19

1    time it is considered <u>continuing</u> in character."   *Id*.   In such

2    cases "every repetition of a continuing nuisance is a separate

3    wrong for which the person injured may bring successive actions

4    for damages until the nuisance is abated, even though an action

5    based on the original wrong may be barred."   *Id.*; *see also Baker*

6    *v. Burbank- Glendale- Pasadena Airport Auth.*, 39 Cal. 3d 862

7    (1985).   "In case of doubt as to the permanency of the injury the

8    plaintiff may elect whether to treat a particular nuisance as

9    permanent or continuing."   *Baker*, 39 Cal. 3d at 870.   Here, no

10   such election is made in the complaint.

11        "The cases finding the nuisance complained of to be

12   unquestionably permanent in nature have involved solid

13   structures, such as a building encroaching upon the plaintiff's

14   land."   *Mangini v. Aerojet-General Corp.,* 230 Cal. App. 3d 1125,

15   1145-46 (1991).   In contrast, "[t]he classic example of a

16   continuing nuisance is an ongoing ... disturbance, ... caused by

17   noise, vibration or foul odor."   *Vowinckel v. N. Clark & Sons*,

18   216 Cal. 156, 158 (1932).   The key question is whether the

19   nuisance may be discontinued or abated.   *Mangini,* 230 Cal. App.

20   3d at 1146.

21        Here, the alleged nuisance is the release of hazardous

22   chemicals into the soil and groundwater and the resulting spread

23   of that release in a manner that harms Plaintiffs.   This is the

24   type of nuisance that can be discontinued or abated.   Therefore,

25   Plaintiffs' nuisance cause of action can be construed as a

26   "continued nuisance" claim, tolling the statute of limitations

27   until the nuisance has been discontinued or abated, which has yet

28   to occur.

Defendant Pearce argues, however, that because he was not an owner of any relevant property during the three year period prior to the filing of Plaintiffs' complaint, any continued nuisance claim brought against him is time-barred anyway.  This is not correct.  The *Mangini* court noted:

> [P]laintiffs' land may be subject to a continuing nuisance even though defendant's offensive conduct ended years ago. That is because the "continuing" nature of the nuisance refers to the continuing damage caused by the offensive condition, not to the acts causing the offensive condition to occur.  The point is illustrated by *Kafka v. Bozio*, [] 191 Cal. 746 [751 (1923)]. There, defendant constructed a building next to plaintiffs' building. As originally constructed, the defendant's building was straight and plumb. However, part of the building was built on soft ground, and, over time, the building tipped and leaned against plaintiffs' building, causing damage to the latter. Concluding plaintiffs had a good claim for continuing nuisance, the court said, "Where continuing or recurring injury results from a wrongful act or from a condition wrongfully created and maintained, such as a continuing nuisance or trespass, there is not only a cause of action for the original wrong arising when the wrong is committed, but separate and successive causes of actions, for the consequential damages arise as and when such damages are from time to time sustained; and therefore so long as the cause of the injury exists and the damages continue to occur, plaintiff is not barred of a recovery for such damages as have accrued within the statutory period beyond the action, although a cause of action based solely on the original wrong may be barred." *Id*. at p. 751 [additional citation].

230 Cal. App. 3d at 1147 (emphasis added).  Plaintiffs' nuisance claim against Pearce, construed as a claim for continuing nuisance, is that Pearce created an offensive condition that is continuing to cause Plaintiffs' harm.  This action is not time-barred.

The same applies to a claim of continuing trespass.  The Restatement Second of Torts, section 161, defines continuing trespass as "[t]he actor's failure to remove from land in the

21

1   possession of another a thing which he has tortiously ... placed

2   on the land constitutes a continuing trespass for the entire time

3   during which the thing is on the land and ... confers on the

4   possessor of the land an option to maintain a succession of

5   actions based on a theory of continuing trespass or to treat the

6   continuance of the thing on the land as an aggravation of the

7   original trespass."  Plaintiffs' trespass claim against Pearce,

8   construed as a continuing trespass claim, is not time barred.[12]

9           2.   Remaining State Law Claims for Negligence and
                 Negligence Per Se.

10

11          As there is no "continuing negligence" doctrine, Pearce's

12  motion to dismiss the negligence and negligence per se claims

13  must be otherwise resolved.  The record currently before the

14  court is insufficient to determine whether Plaintiffs had reason

15  to know that Pearce was contributing to any contamination for

16  which state law liability might attach.  On the one hand, if the

17  Pearce/Martinez site is "southeast and adjacent to" the

18  Plaintiffs' site, then Pearce might have a colorable argument

19  that the 1997 Water Board letter put Plaintiffs on notice of

20  their potential contribution might be valid.  The complaint

21  suggests that the Pearce/Martinez site is "adjacent" to the

22  Plaintiffs' site.  However, at oral argument Pearce indicated

23  that his property was across the street.

24          The Ninth Circuit has emphasized that determining a

25  commencement date in such situations is a fact-intensive process

26

27          [12]    It is not at all clear how Plaintiffs can maintain a
    trespass claim against Pearce if they concede that Pearce has not
28  actually contaminated Plaintiffs' property, but Pearce has not
    moved to dismiss the trespass claim on this ground.

1   and has articulated a helpful approach to applying the delayed

2   discovery rule in the context of summary judgment.  *In O'Connor,*

3   311 F.3d at 1150, the Ninth Circuit considered whether summary

4   judgment should issue against Plaintiffs' state law claims, where

5   Plaintiffs alleged they developed cancer as a result of exposure

6   to hazardous substances covered by CERCLA.  The key issue was

7   whether Plaintiffs could invoke the delayed discovery rule.  The

8   Ninth Circuit reasoned.

> Because Plaintiffs have the burden of proof at trial to
> establish that they are entitled to the benefit of the
> discovery rule, to defeat summary judgment they were
> required to come forward with evidence establishing a
> triable issue of fact with regard to whether the
> discovery rule applies.  Summary judgment was improper
> here unless the <u>only reasonable inference</u> that can be
> drawn is that Plaintiffs knew or should have known more
> than one year before filing their claims that the []
> contamination was the cause of their diseases.
>
> Review of the record does not lead inexorably to a
> single inference that Plaintiffs knew or suspected the
> cause of their injuries more than one year before
> filing their claims. <u>Courts routinely recognize the
> "fact-intensive nature" of the determination of when a
> plaintiff is on notice of a claim</u>. Critical factual
> disputes that govern when Plaintiffs knew or should
> have known of their claims preclude summary judgment
> here.
>
> A two-part analysis determines whether Plaintiffs
> reasonably should have known of their claim. The goal
> of this analysis is to evaluate when a reasonable
> person would have connected his or her symptoms to
> their alleged cause. First, we consider whether a
> reasonable person in Plaintiffs' situation would have
> been expected to inquire about the cause of his or her
> injury. Second, if the plaintiff was on inquiry notice,
> "we must next determine whether [an inquiry] would have
> disclosed the nature and cause of plaintiff's injury so
> as to put him on notice of his claim."  The plaintiff
> will be charged with knowledge of facts that he would
> have discovered through inquiry.

*Id.* (emphasis added)(internal citations and quotations omitted).

To properly apply this approach, the record must be developed

1  further.   Pearce's motion to dismiss is DENIED without prejudice

2  to issue being raised again on summary judgment.   If he desires

3  to separately notice a motion for summary judgment with respect

4  to the negligence claims, he may do so, although, as a matter of

5  judicial efficiency, it is more appropriate that this issue be

6  presented as part of a broader motion for summary judgment.

7

8        C.   <u>State Law Equitable Indemnity Claim</u>.

9        Equitable indemnity "permits a concurrent tortfeasor to

10 obtain partial indemnity from other concurrent tortfeasors on a

11 comparative fault basis.*"  Bostick v. Flex Equip. Co., Inc.,* 147

12 Cal. App. 4th 80, 129 (2007)(*citing American Motorcycle Assn. v.*

13 *Superior Court*, 20 Cal.3d 578, 598 (1978)).   Pearce asserts that

14 Plaintiffs' cause of action for equitable indemnity should be

15 dismissed because "this is not a situation involving concurrent

16 tortfeasors ... with one seeking to recover on a comparative

17 fault basis from the other."   This assertion is unsupported and

18 simply wrong.   Plaintiffs have alleged that Defendants are

19 concurrent/joint tortfeasors.[13]   Pearce's motion to dismiss this

20 claim is DENIED.

21 //

22 //

23 //

24

25 ─────────────────

26      [13]   CERCLA contains a mechanism for determining whether a
   potentially responsible party's liability is several or joint.
27 42 U.S.C. §§ 9706(a), 9613(f), 9652(d).   Whether and to what
   extent CERCLA's liability scheme preempts any state law equitable
28 indemnity claim is not before the court.

1      **D.    Federal and State Declaratory Relief Claims.**

2      Pearce argues that the federal and state declaratory relief

3  claims, the Second and Eighth Causes of Action, respectively,

4  should be dismissed because the underlying claims upon which they

5  are based are time-barred.  Because Plaintiffs' federal claims

6  and at least some of his state law claims survive, Pearce's

7  motion to dismiss the declaratory relief claims must be DENIED as

8  well.

9                      **VI.   CONCLUSION**

10      For the reasons set forth above:

11      (1) Pearce's motion to dismiss the CERCLA, equitable

12  indemnity, and federal and state declaratory relief claims is

13  DENIED;

14      (2) As to Plaintiff's nuisance and trespass claims,

15  construing these as claims for continuing nuisance and continuing

16  trespass, Pearce's motion to dismiss is DENIED;

17      (3) As to Pearce's motion to dismiss Plaintiffs' negligence

18  claims, this motion is DENIED with the understanding that Pearce

19  may challenge these claims in a motion for summary judgment; and

20      (4) Plaintiffs' motion to supplement the record is GRANTED.

21

22  IT IS SO ORDERED.

23  Dated:    October 10, 2008            _____ **/s/ Oliver W. Wanger** _____
                                         **UNITED STATES DISTRICT JUDGE**
24

25

26

27

28

                              25