**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ENNS PONTIAC, BUICK, & GMC TRUCK, et al.,**<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>**ORELIA FLORES, et al.,**<br><br>　　　　Defendants. | **1:07-cv-01043-OWW-DLB**<br><br>**MEMORANDUM DECISION REGARDING MOTION TO AMEND (Doc. 124)** |

## I. INTRODUCTION.

On July 19, 2007, Plaintiffs filed their original complaint in this action. (Doc. 2). Plaintiffs filed a first amended complaint ("FAC") on November 7, 2007. (Doc. 13).

Plaintiffs filed a motion to amend the FAC on February 17, 2011. (Docs. 123, 124). Defendants Mabel Lee, Reedley Dry Cleaning Works, Reedley Steam Laundry, and the Estate of Herbert Lee filed opposition to Plaintiffs' motion on April 4, 2011. (Doc. 128). Defendant the Estate of Sieto Yamaguchi filed opposition on April 4, 2011; Defendant John Pierce also filed opposition to the motion to amend on April 4, 2011. (Docs. 132, 135). Plaintiffs filed replies on April 11, 2011. (Docs. 138, 139, 140).

///
///

1

## II. **FACTUAL BACKGROUND**.

**FAC's Allegations**

This case concerns the alleged release of various hazardous substances, namely solvents used in the dry cleaning industry, into a groundwater plume underlying part of Reedley, California. The FAC includes two federal claims for (1) recovery of "response" costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") §§ 107(a)(1-4)(B), and (2) declaratory relief under federal law, as well as five additional state law claims for (3) negligence per se, (4) negligence, (5) public and private nuisance, (6) trespass, and (7) equitable indemnity, and (8) declaratory relief under state law.

The FAC sets forth the following general background information. Plaintiffs own real property located at 1319 G. Street, Reedley, California ("Plaintiffs' Site"). (FAC ¶2.) Prior to Plaintiffs taking ownership of 1319 G. Street, Mabel and Herbert Lee (the "Lee Defendants") owned and/or operated a dry cleaning business at that location from approximately the 1940s through the 1970s. (FAC ¶4.) Herbert Lee is now deceased.

Orelia Florez and Sieto Yamaguchi (the "Flores/Yamaguchi" defendants) owned and/or operated real property at 1340 G. Street, Reedley, California, which is across the street from Plaintiff's Site. (FAC ¶¶ 4, 7.). Sieto Yamaguchi is now deceased. Finally, John Pearce ("Pearce") and Patty and Louie Martinez ("Martinez") "each owned and/or operated real property nearby and/or adjacent to the Plaintiffs' Site." (FAC ¶4.) The FAC alleges that the properties either currently or previously owned by these Defendants "caused Plaintiffs and Plaintiffs' Site environmental

contamination." (Id.)

Plaintiffs allege that Defendants and Defendants' properties "generated disposed of or released ... hazard[ous] substances or wastes that caused contamination and pollution of structures, soils, subsoils, surface water and groundwater at and in the vicinity of the Plaintiffs' Site (both on-site and off-site) through the handling, generation, usage, storage, disposal of and/or release of hazardous substances at, onto and from the Plaintiffs' Site and Defendants' Sites." (FAC ¶5.). The FAC's allegations regarding the nature of the contamination at issue are very generic, alleging that Defendants, beginning in the 1940s, while operating either on Plaintiffs' Site or other sites, released hazardous substances including chlorinated hydrocarbon compounds ("CHCs"). (FAC ¶¶ 37-38.) These CHC releases allegedly caused and contributed to the contamination of soil and groundwater underlying Plaintiffs' Site, Defendants' properties, and surrounding properties. (FAC ¶37.)

In the First Claim for Relief, for recovery of response costs under CERCLA §§ 107(a)(1-4)(B), Plaintiffs allege that they "have incurred, and will continue to incur, substantial Response Costs ... to fully characterize the Plaintiffs' Site, including, but not limited to, soil sampling; installation of groundwater monitoring wells; sampling such wells and having all samples analyzed...." (FAC ¶42.) In addition, Plaintiffs anticipate that they will incur additional costs to address existing and future groundwater contamination. (Id.) The FAC specifically alleges that Defendants "caused and continue to cause Plaintiffs to incur Response Costs on their property and for the underlying groundwater." (FAC ¶49.) The

FAC contains no further details about the nature of Defendants' releases or contribution to any contamination.

### III. **LEGAL STANDARD**.

Rule 15(a), Federal Rules of Civil Procedure, provides that "leave [to amend] shall be freely given when justice so requires." "The purpose of pleading is 'to facilitate a proper decision on the merits' … and not erect formal and burdensome impediments to the litigation process. Unless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." *Howey v. United States*, 481 F.2d 1187, 1190 (1973). However, "[t]his strong policy toward permitting the amendment of pleadings … must be tempered with considerations of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' *Foman v. Davis*, 371 U.S. 178, 182 (1962)." *Schlacter-Jones v. General Telephone of California*, 936 F.2d 435, 443 (9th Cir. 1991). "These factors, however, are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs*, 833 F.2d at 186; *see also Jones*, 127 F.3d at 847 n.8.

"[I]t is the consideration of prejudice to the opposing party that carries the greatest weight … Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003). "The party opposing leave to amend bears the burden of showing prejudice." *Serpa v. SBC Telecommunications., Inc.*, 318 F.

**4**

Supp. 2d 865, 870 (N.D.Cal.2004).

**Plaintiffs' Proposed Amendments**

Plaintiffs seek to amend the complaint in order to (1) join additional parties, including the administrators for the estates of deceased Defendants; (2) correct the spelling of certain Defendants' names; and (3) add a claim pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA"). Plaintiffs allege that the necessity for the proposed amendments was revealed during discovery.

## IV. DISCUSSION.

**A.  Amendment to Add RCRA Claims**

RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste. *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996) (citing *Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 331-32 (1994)).  Its purpose is to minimize the present and future threat to human health and the environment, not effectuate the clean-up of toxic waste sites or allocate those costs. 42 U.S.C. § 6902(b); *Meghrig*, 516 U.S. at 483.  RCRA provides for citizen suits to obtain a "mandatory injunction, i.e., one that orders a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste, or a prohibitory injunction, i.e., one that 'restrains' a responsible party from further violating RCRA." *Id*. at 484.

Citizen suits under RCRA require proof of notice.  *E.g., Covington v. Jefferson County*, 358 F.3d 626, 636 (9th Cir. 2004). For suits alleging present violations of RCRA, the plaintiff must provide notice to the relevant parties sixty-days before filing suit. *Id.* (citing 42 U.S.C. § 6972(b)(1)(A)).  For actions alleging

5

"contribution" to present or past violations of RCRA, a ninety-day notice is required. *Id*. (citing § 6972(b)(2)(A)). Both notice provisions are jurisdictional: absent compliance with a required notice provision, a district court lacks subject matter jurisdiction to hear the RCRA claims. *Id*. (citing *inter alia Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (holding that the ninety-day notice requirement is jurisdictional)). The Supreme Court has held that courts may not take a "flexible or pragmatic" approach to RCRA's notice requirements; if a citizen commences an action under RCRA without complying with the notice requirements embodied in section 6972(b)(1), the action must be dismissed. *E.g., Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989).

The EPA has promulgated a regulation detailing the contents of the RCRA notice requirement:

> Notice regarding an alleged violation of a standard, regulation, condition, requirement, or order (including any provision of an agreement under section 120 of the Act, relating to Federal facilities) which has become effective under this Act shall include sufficient information to allow the recipient to identify the specific standard, regulation, condition, requirement, or order (including any provision of an agreement under section 120 of the Act, relating to Federal facilities) which has allegedly been violated; the activity or failure to act alleged to constitute a violation; the name and address of the site and facility alleged to be in violation, if known; the person or persons responsible for the alleged violation; the date or dates of the violation; and the full name, address, and telephone number of the person giving notice.

40 C.F.R § 374.3(a).

Defendants contend that Plaintiffs have not complied with RCRA's notice requirements because the notices Plaintiffs provided do not contain sufficient information to afford Defendants an

**6**

opportunity to identify the basis for the notices. Specifically, Defendants assail Plaintiffs' notices on the grounds that they do not (1) specify the nature of the activity on the property that allegedly contributed to contamination; (2) identify the hazardous waste released; or (3) provide any dates or a range of dates for the alleged releases. Defendants also contend that the notices were not served in compliance with the applicable regulation.

RCRA's notice provision is designed to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits. *Hallstrom*, 493 U.S. at 29.

> Requiring citizens to comply with notice and delay requirements serves this congressional goal in two ways. First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits. First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits. In many cases, an agency may be able to compel compliance through administrative action, thus eliminating the need for any access to the courts. See 116 Cong. Rec. 33104 (1970) (comments of Sen. Hart). Second, notice gives the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit."

*Id*. The legislative objectives identified by the Supreme Court in *Hallstom* cannot be met if citizen plaintiffs are excused from providing adequate information in the pre-suit notice to enable the recipients of such notices to identify the specific alleged violations. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp*., 629 F.3d 387, 399 (4th Cir. 2011) (discussing notice

**7**

requirements under similar provision of the Clean Water Act).[1]

The key language in RCRA's notice regulation is the phrase "sufficient information to allow the recipient to identify the specific standard, regulation, condition, requirement, or order... which has allegedly been violated." *See San Francisco Baykeeper, Inc., v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002) (noting that similar phrase contained in parallel regulation promulgated under the CWA is the key component of that regulation). Notice is sufficient if it is specific enough "to give the accused company the opportunity to correct the problem." *Id.* (citation omitted). As a general matter, a notice should include information sufficient to permit the recipient to identify dates or a range of dates applicable to the alleged violations. *San Francisco Baykeeper,* 309 F.3d at 1158-59; *California Sportfishing Protection Alliance v. City of W. Sacramento*, 905 F. Supp. 792, 799 (E.D. Cal. 1995) ("Ideally plaintiff will identify the precise date. But at the least plaintiff should give a range as to date that is reasonably limited.").

The notice should also identify the types of pollutants allegedly discharged. *See WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 917 (9th Cir. 2004). At a minimum, the notice should identify a suspected source of the alleged problem, such as debris, manufacturing materials, activities, or practices possibly leading to the discharge of contamination. *See id.* at 917-18 n.2. "[T]he recipient of the notice must understand from the notice what the

---

[1] As numerous courts have noted, because of the close similarity between the respective notice regulations applicable to RCRA and CWA, case law construing one regulation is generally applicable to the other.

**8**

citizen is alleging." *City of W. Sacramento*, 905 F. Supp. at 799.

The boilerplate and conclusory RCRA notices provided by Plaintiffs are insufficient. The notices do not provide any information to enable the recipient to ascertain a range of dates for the alleged violations. The notices do not suggest the mechanism for contamination; to the contrary, the notices say nothing about what operations on the site are alleged to have caused contamination. The notices do not even generally identify the types of contaminants at issue. In short, the notices are devoid of any specific information sufficient to allow the recipient to identify the specific standards, regulations, conditions, requirements, or orders which have allegedly been violated. 40 C.F.R § 374.3(a).

Because Plaintiffs notices fail to satisfy statutory notice requirements, permitting amendment to add RCRA claims is futile absent a legally sufficient notice; this reason alone justifies denial of Plaintiffs' motion to Amend the complaint to add RCRA claims.[2] Plaintiffs' motion to amend to add RCRA claims is DENIED.

**B. Amendment to Join Additional Parties**

Plaintiffs seek to join five additional individuals as Defendants: Ethel Warnock, Bruce Warnock, Jesse Williams, Reynaldo Betancourt, and Floyd Morse ("New Parties"). Plaintiffs also seek to name the administrators of the estates of two Defendants already named in this action: Sachiko Yamaguchi for the Estate of Sieto Yamaguchi, and Patricia Clothier and Carolyn Whitesides for the Estates of Mabel and Herbert Lee ("Administrator Defendants").

---

[2] Because Plaintiffs' RCRA notices are deficient, the court does not reach the parties additional contentions.

**9**

Plaintiffs also seek to amend the complaint to correct the spelling of the names of two Defendants, John Pearce and Patsy Martinez.

### 1. Addition of New Parties

#### a. Undue Delay

On May 14, 2010, the court granted the parties' request for a twelve-month extension of all deadlines set forth in the January 12, 2009 Scheduling Order. (Doc. 122, Stipulated Amendment to Scheduling Order) ("Stipulation"). It is beyond question that at the time the court granted the parties request to extend all deadlines in May 2010, Plaintiffs knew they needed to amend the complaint to add the New Parties as defendants; each of them was identified by name in the Stipulation.[3] Plaintiffs motion does not explain why the New Parties are being added at this late stage in the litigation. *See, e.g., AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953.n9, 954 (9th Cir. 2006) (finding district court did not abuse discretion in denying motion to amend that did not "allege any newly discovered facts" or explain the plaintiff's delay in filing the motion); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (noting that unexplained delay in filing motion weighs against permitting amendment).

Joinder will require that the New Parties be given sufficient time to retain counsel, propound discovery, and file dispositive motions, leading to yet another modification of the Scheduling Order. (*See* Doc. 122). This action has been pending on the

---

[3] In fact, Plaintiffs' motion suggests that they have known of the need to add the New Parties since December of 2008: "all Parties have been aware of Enns' intent to add **the** additional parties since the first Scheduling Conference held on December 18, 2008." (Motion to Amend at 5) (emphasis added).

**10**

court's docket for almost four years.  Further delay must be explained.

### b. Prejudice

Prejudice to the opposing party is the most critical factor in determining whether to grant leave to amend. *Howey v. U.S.*, 481 F.2d 1187, 1190 (9th Cir. 1973).  A need to extend the discovery period and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint. *E.g., Lockheed Martin Corp.,* 194 F.3d at 986 (citing *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming the district court's denial of motion to amend pleadings filed on the eve of the discovery deadline)); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of motion to amend filed shortly before discovery cutoff because "amended pleading would have prejudiced defendant, which would then have had a very limited amount of time to respond"); see also Goolsby v. Carrasco, 2010 U.S. Dist. LEXIS 111510 * 13 (E.D. Cal. 2010) ("Given the looming discovery deadlines, the Court concludes that these new defendants would be significantly prejudiced by the amendment").

The hearing on Plaintiffs' motion is set for April 18, 2011. If Plaintiffs' motion is granted, New Parties will have approximately seven weeks to propound discovery within the currently scheduled deadlines. Even if the discovery deadlines are extended sixth months, New Parties will be required to accelerate their defense. *AmerisourceBergen*, 465 F.3d at 953 ("Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the Procrit purchased by

**11**

AmerisourceBergen was tainted, would have unfairly imposed potentially high, additional litigation costs").

Amendment to add New Parties may cause undue delay and serious prejudice to the nonmovants.

### 2. Addition of Administrator Defendants

Plaintiffs seek to add the administrators of the estates of deceased Defendants currently named in this action: Sachiko Yamaguchi for the Estate of Sieto Yamaguchi, and Patricia Clothier and Carolyn Whitesides for the Estates of Mabel and Herbert Lee.

#### a. Lee Defendants

The Lee Defendants contend that amendment to add Patricia Clothier and Carolyn Whitesides as administrators would be futile because (1) they are incapable of satisfying any order for injunctive relief; (2) Mabel Lee's estate contains no assets; and (3) Plaintiffs lack any legal means of compelling either woman to serve in the estate administration they seek. Lee Defendants also contend that Ms. Clothier and Ms. Whitesides will be unduly prejudiced because they are not California residents.

Lee Defendants' initial disclosures represent that Mabel Lee is the executrix of Herbert Lee's estate, and that Patricia Clothier is the executrix of Mabel Lee's estate. (Doc. 141, Ex. 3). The court's January 14, 2009 scheduling order provides that "Plaintiffs shall name the individual personal representatives for the Estates of all deceased parties who are Defendants in this action." (Doc. 97). Amendment to add Ms. Clothier and Ms. Whitesides as the personal representatives of deceased Defendants is appropriate, as the proposed amended complaint alleges that Ms. Whitesides and Ms. Clothier are the administrators of the Estates

**12**

of Mabel Lee and Herbert Lee. Defendants have not established that Ms. Whitesides and Ms. Clothier are not the personal representatives of the Lee estates, or that amendment would be futile.

Lee Defendants assertion of prejudice is insufficient, as their argument that they would be prejudiced due to the fact that they do not live in California misapprehends the prejudice inquiry applicable under Rule 15. The law requires addition of personal representatives for deceased parties. The prejudice that the Lee Defendants identify is no more than the inconvenience every party suffers when they are sued in a state other than the state of their residence. Such inconvenience does not suffice to foreclose amendment under Rule 15's liberal policy favoring amendments.

**b. Yamaguchi Defendants**

Yamaguchi Defendants' opposition is directed almost exclusively to the alleged impropriety of naming "the Estate of Sieto Yamaguchi" as a Defendant in this action, however, the Estate of Sieto Yamaguchi is already a named Defendant. Plaintiffs' proposed amended complaint seeks to add Sachiko Yamaguchi as Sieto Yamaguchi's personal representative. This is what the law requires.

The only argument advanced with respect to Plaintiffs' proposed amendment to add Sachiko Yamaguchi is the following:

> in order to sue a decedent's estate for damages exceeding available liability insurance, the claimant must have filed a timely claim in the probate proceedings and join the personal representative in the action. (See Cal. Probate Code §554, 9390(b)). The statute of limitations on such a claim is one year from the decedent's death. (See Cal. Civ. Code § 366.2)...However, by the time the court hears the [Motion to Amend], it will have been over four years since Dr. Yamaguchi passed away. Failure to

**13**

>   name Dr. Yamaguchi's personal representative within one year of his death is fatat to all claims alleged by Plaintiffs against Dr. Yamaguchi's personal administrator for damages exceeding available liability insurance coverage in this action. Consequently, Plaintiffs' Motion is futile.

(Doc. 132, Opposition at 12). Defendants' argument is scattered.

Under California law, there are two methods for recovering damages from a deceased tortfeasor:

>   If the decedent's property has been distributed through a probate administration in the probate court, the plaintiff must first filed a claim in probate court. *See* CAL. PROB. CODE § 9351 ("An action may not be commenced against a decedent's personal representative on a cause of action against the decedent unless a claim is first filed as provided in this part and the claim is rejected in whole or in part"); *see also Boyle v. County of Kern*, CV 03-5162 OWW GSA, 2008 U.S. Dist. LEXIS 5592, 2008 WL 220413, *7 (E.D. Cal. Jan. 25, 2008) ("Before a creditor may commence a lawsuit against an estate, the creditor must file a claim. . . . Filing a lawsuit against an estate is not the equivalent of filing a probate claim," citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 841 (9th Cir. 1996)). Where the decedent's property is distributed without probate, however, the recipients of the decedent's property are personally liable for his debts. See CAL. PROB. CODE § 13109 ("A person to whom payment, delivery, or transfer of the decedent's property is made under this chapter is personally liable, to the extent provided in Section 13112, for the unsecured debts of the decedent. Any such debt may be enforced against the person in the same manner as it could have been enforced against the decedent if the decedent had not died. In any action based upon the debt, the person may assert any defenses, cross-complaints, or setoffs that would have been available to the decedent if the decedent had not died")

*Pelayo v. City of Downey*, 570 F. Supp. 2d 1183, 1192 (N.D. Cal. 2008). Nothing in the FAC, the proposed amended complaint, or the record establishes that Sieto Yamaguchi's property was distributed through probate administration in the probate court. Further, the sections of the California Probate Code cited by Defendants, sections 550-555, apply "in any case where there is a claim for

**14**

damages for which the decedent was insured." *Cal. Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930, 949 (E.D. Cal. 2003). Defendants represent that Sieto Yamaguchi had no such insurance. (Doc. 132, Opposition at 12). The filing of a claim in probate is jurisdictional.

**C. Spelling Corrections**

Plaintiffs seek to change the spelling of the name of Defendant "John Pierce" to "John Pearce" and of Defendant "Patty Martinez" to "Patsy Martinez." Defendants do not oppose this minor correction.

**ORDER**

For reasons stated, IT IS ORDERED:

1) Plaintiffs' Motion to Amend is DENIED with respect to the addition of RCRA claims;
2) Plaintiffs' Motion to Amend id DENIED with respect to joining Ethel Warnock, Bruce Warnock, Jesse Williams, Reynaldo Betancourt, and Floyd Morse as Defendants;
3) Plaintiffs' motion to amend is GRANTED with respect to adding the personal representatives of deceased Defendants and with respect to correction of spelling errors;
4) Plaintiffs shall file an amended complaint within five days of receiving electronic service of this decision;
5) Defendants shall file responsive pleading within twenty days of receiving electronic service of an amended complaint; and
6) Plaintiffs shall file a form of order consistent with this decision within five days of receiving electronic service of this decision.

**15**

IT IS SO ORDERED.

**Dated:   April 20, 2011**             **/s/ Oliver W. Wanger**
                                         UNITED STATES DISTRICT JUDGE