# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENNS PONTIAC, BUICK & GMC TRUCK, et al.,<br><br>     Plaintiffs,<br><br> v.<br><br><br>ORELIA FLORES, et al.,<br><br><br><br>     Defendants. | 1:07cv01043 OWW DLB<br><br>ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL DEPOSITION TESTIMONY AND DOCUMENTS FROM PERSON MOST QUALIFIED ON BEHALF OF KLEINFELDER WEST<br>(Document 183)<br><br>ORDER REGARDING DEFENDANT JOHN PEARCE'S MOTION FOR PROTECTIVE ORDER RE: DEPOSITION OF KLEINFELDER AND PRODUCTION OF PROTECTED DOCUMENTS RELATING TO KLEINFELDER'S WORK<br>(Documents 205 and 224) |

Plaintiffs Enns Pontiac, Buick & GMC Truck, Earl L. Enns, Esther J. Enns, Harold J. Enns and Patricia L. Enns ("Plaintiffs) filed a motion to compel deposition testimony and documents from Kleinfelder West's person most qualified on June 1, 2011.  On June 15, 2011, Defendant John Pearce ("Defendant Pearce" or "Pearce") filed a related motion for protective order regarding the deposition of Kleinfelder West and production of documents.  The motions were heard on July 1, 2011, before the Honorable Dennis L. Beck, United States Magistrate Judge.  Jeffery Caufield and Matthew Friedrichs appeared telephonically on behalf of Plaintiffs.  Kathleen Clack and Mark Schallert appeared on behalf of Defendant Pearce.  Andrew Skanchy appeared on behalf of Defendant Estate of Sieto Yamaguchi.

## **INTRODUCTION**

Plaintiffs filed this environmental contamination action on July 19, 2007.  The operative

1

complaint involves claims related to the source, nature and extent of alleged contamination underlying and/or surrounding properties located on G Street in Reedley, California, including 1307, 1319, and 1340 G Street ("G Street Properties").  Contamination allegedly existed and/or exists beneath the G Street Properties and surrounding areas.  Prior businesses at 1319 and 1340 G Street include dry cleaning sites, which are under the jurisdiction of the California Regional Water Quality Control Board ("RWQCB").  Plaintiffs own real property located at 1319 G. Street, Reedley, California ("Plaintiffs' site").  Plaintiffs allege that properties either currently or previously owned by Defendants caused environmental contamination to Plaintiffs' site.

Plaintiffs' complaint includes a federal claim for recovery of costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607 et seq., along with other federal and state law claims.

On April 27, 2011, Plaintiffs issued a Federal Rule of Civil Procedure 45 subpoena on Kleinfelder West, Inc. ("Kleinfelder"), a prior environmental consultant for Defendant John Pearce.  The subpoena was directed at the person most qualified ("PMQ") for a deposition and to obtain documents regarding Kleinfelder's preparation of a "Site Assessment Report Former Dry Cleaners 1340 G Street Reedley, California" dated February 25, 2010.  The report was prepared for Defendant Pearce and the RWQCB.

On May 25, 2011, Plaintiffs deposed Richard Fink, Kleinfelder's designated PMQ regarding the site assessment report.  During the deposition, Pearce's counsel "continuously instructed" Mr. Fink not to answer questions.  As a result, Plaintiffs' counsel suspended the deposition to file a motion to compel.

On June 1, 2011, Plaintiffs filed their motion to compel deposition testimony and documents from Kleinfelder's PMQ.  Doc. 188.

On June 15, 2011, Defendant Pearce filed a related motion for protective order to terminate the deposition of Pearce's non-testifying expert, Kleinfelder, and to preclude discovery of non-public work product and confidential attorney-client communications to Kleinfelder, whether requested by subpoena or other document request.  Doc. 205.

The parties filed Joint Statements regarding the motion to compel and the motion for

1  protective order on June 24, 2011.  Docs. 220 and 224.

2  <center>**DISCUSSION**</center>

3  **A.    Plaintiffs' Motion to Compel**

4       **1.    Factual Background**

5       On May 2, 2008, RWQCB ordered current or previous property owners and/or operators

6  of a dry cleaner at the 1340 G Street site, including Pearce to submit a work plan investigating

7  the possible releases of volatile organic compounds ("VOCs") to soil and groundwater from the

8  1340 G Street Property.  Declaration of Matthew Friedrichs ("Friedrichs Dec.") ¶ 3 and Exhibit

9  2.

10       On September 21, 2009, Kleinfelder, on behalf of Pearce, submitted a Site Assessment

11 Work Plan to the RWQCB.  The scope of work included sampling soil gas for VOCs.  The

12 RWQCB found the scope of work appropriate and ordered a report summarizing the results.

13 Exhibits 3-4 to Friedrichs Dec.

14       On February 25, 2010, Kleinfelder submitted a Site Assessment Report to the RWQCB.

15 Exhibit 5 to Friedrichs Dec.  Plaintiffs claim that the Kleinfelder report attempted to shift blame

16 for the contamination to Plaintiffs, but the RWQCB reportedly rejected this notion because the

17 data allegedly confirmed that contamination originated from Pearce's site located at 1340 G

18 Street.  In a letter dated March 22, 2010, the RWQCB made the following findings:

19       PCE was detected at significant concentrations in all of the modules placed at the
         [1340 G Street] site.  The highest concentrations of PCE detected were in the
20       vicinity of the former dry cleaning machine and storage tank areas.

21 Exhibit 6 to Friedrichs Dec.

22       Based on the findings, the RWQCB required Pearce to submit an additional work plan for

23 assessing the concentration of VOCs in soil vapor, and the lateral and vertical extent of impacted

24 soil.  *Id.*  Following the RWQCB directive, Kleinfelder submitted additional reports and

25 correspondence, which are on file with the RWQCB and are publicly available.  Exhibits 7-10 to

26 Friedrichs Dec.

27       On April 27, 2011, Plaintiffs issued a subpoena to Kleinfelder's PMQ regarding the Site

28 Assessment Report dated February 25, 2010.  The subpoena also sought drafts of the report and

<center>3</center>

1  correspondence to or from defense counsel Kathleen Clack, Defendant Pearce, Richard Fink and

2  Michael Burns regarding the report.  Exhibit 1 to Friedrichs Dec.

3       Plaintiffs attempted to depose Kleinfelder's PMQ, Richard Fink, on May 25, 2011.

4  Plaintiffs claim that neither Kleinfelder, nor Defendant Pearce objected to the scope of the

5  subpoena prior to the deposition of Mr. Fink or sought a protective order regarding the

6  production of documents until weeks after the deposition and after Kleinfelder produced a

7  limited set of documents.

8       **2.     Analysis**

9       <u>Document Subpoena</u>

10      According to Plaintiffs, Pearce asserted a blanket privilege over the entire Kleinfelder

11 file, including documents already disclosed to the RWQCB and communications between

12 Pearce's counsel and the RWQCB.  Pearce also refused to allow Kleinfelder's PMQ to answer

13 approximately 29 questions at the deposition regarding the February 2010 Site Assessment

14 Report.  Friedrichs Dec. ¶¶ 12, 19.  Pearce and Kleinfelder also have refused to produce a

15 privilege log.  Friedrichs Dec. ¶¶ 16-17.  Plaintiffs contend that information requested during the

16 deposition and through document requests cannot be withheld on a claim of privilege.

17      A party asserting the attorney-client privilege or work product protection bears the burden

18 of demonstrating that the privilege or protection applies.  *See, e.g., In re Grand Jury Subpoenas*,

19 974 F.2d 1068, 1071 (9th Cir. 1986) (party asserting privilege must make a prima facie showing

20 that the privilege protects the information the party intends to withhold); *U. S. Inspection Svcs.*

21 *Inc. v. NL Engineered Solutions, LLC*, 268 F.R.D. 614, 617 (N.D. Cal. 2010) (party asserting

22 protection of facts and opinions of non-testifying expert bears the initial burden of showing that

23 the protection applies).

24      To support the motion to compel, Plaintiffs first argue that the documents requested

25 cannot constitute work product or any other privilege if they were prepared in response to a

26 governmental investigation or order.  "Neither the attorney-client privilege nor the work product

27 doctrine applies to . . . documents [ ] created with the intent to disclose them to the Government."

28 *In re Syncor Erisa Litigation*, 229 F.R.D. 636, 645 (C.D. Cal. 2005) (noting that documents

4

prepared to benefit a party in a governmental investigation and created with the intent to disclose were never privileged).  Plaintiffs claim that Kleinfelder's reports, correspondence, investigation and analysis were prepared as a response to RWQCB's May 2, 2008 letter.  Plaintiffs believe that if RWQCB had requested all supporting information, then neither Kleinfelder nor Pearce could object to their production in the public domain.

Plaintiffs believe that there has been a waiver as to the entire subject matter related to the Site Assessment Report.  Plaintiffs rely on *United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006) to support a broad subject matter waiver.  In *Reyes*, attorneys conducted internal investigations and met with the government.  During the meeting, the attorneys gave the government oral briefings on their interviews and findings.  To the extent the attorneys disclosed to the government information contained in their written materials, the court found a waiver of work-product protection.  *Id*. at 604.

The instant case appears distinguishable from *Reyes* to the extent Plaintiffs' motion is based on disclosure of the final assessment report.  Production of a final report generally does not effect a broad waiver as to the entire subject matter of the disclosed material.  *See, e.g., S.E.C. v. Berry*, 2011 WL 825742, *4 (N.D. Cal. Mar. 7, 2011) (noting that waiver of material disclosed to government did not apply to attorneys' underlying notes and draft memoranda); *S.E.C. v. Shroeder*, 2009 WL 1125579, *7 (N.D. Cal. Apr. 27, 2009) (rejecting argument that production of final interview memoranda effected a broad waiver as to the entire subject matter of the disclosed material, including underlying attorney notes and drafts); *Schmidt v. Levi Strauss & Co.*, 2007 WL 628660, *4 (N.D. Cal. Feb. 28, 2007) (disclosing information about investigation to government entities did not effect broad subject matter waiver of work product protection).  In other words, any waiver is limited to production of the underlying data referenced or contained in the report.  Thus, the Court does not find a broad waiver of work product protection based on disclosure of the final Site Assessment Report dated February 25, 2010.  To the extent not already completed, Kleinfelder must produce the underlying data on which the assessment report was based, but need not produce drafts or notes regarding the report.

Second, Plaintiffs contend that communications between Pearce's counsel and RWQCB

should be disclosed because any privilege has been waived.  No privilege attaches to

correspondence between Pearce's counsel and the RWQCB and there is no subject matter waiver

of the privilege as a result of the correspondence or disclosure ot the correspondence.  There is no

indication that Pearce's counsel disclosed anything beyond confirming facts or information

contained in the non-privileged final reports.  *See S.E.C. v. Roberts*, 254 F.R.D. 371, 379 (N.D.

Cal. Aug. 22, 2008) (distinguishing *Reyes* because there was no indication that the attorneys'

mental impressions and conclusions regarding investigation were provided to the government;

noting all physical documents provided to third parties already had been produced).  Further,

Pearce indicates that Plaintiffs already have the documents given to RWQCB.

     Third, Plaintiffs argue that pursuant to Federal Rule of Evidence 502, submission of

privileged or protected information to a governmental agency constitutes a waiver as to all

documents and for all purposes.  Rule 502(a) provides:

> When the disclosure is made in a Federal proceeding or to a
> Federal office or agency and waives the attorney-client privilege or
> work-product protection, the waiver extends to an undisclosed
> communication or information in a Federal or State proceeding
> only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information
> concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a).  Plaintiffs assert that Pearce intentionally submitted reports and other

communications to the RWQCB, the submissions concern the same subject matter as undisclosed

communications, and fairness dictates they be considered together because of Kleinfelder's claim

that the contamination was due to Plaintiffs' activities.  The Court questions the applicability of

Plaintiffs' statutory citation in this instance.  Even applying the statutory provision, however, a

broad waiver is not indicated.  Any waiver is limited to the underlying data and the opinions

expressed in the report to the RWQCB.

     At the hearing, Plaintiffs expressed concern that Defendant Pearce's anticipated expert,

Salem Engineering ("Salem"), would rely on Kleinfelder's February 2010 Site Assessment

Report, and Plaintiffs would be unable to challenge Kleinfelder's conclusions.  At this stage, Plaintiffs' concern is unwarranted.  To the extent Salem relies on Kleinfelder's report, Plaintiffs will have an opportunity to depose and question Salem regarding the Kleinfelder data and conclusions.

Fourth, Plaintiffs argue that any privileges have been waived by failure to produce a privilege log.  However, Plaintiffs tacitly acknowledge that there is no *per se* waiver rule that deems a privilege waived if a privilege log is not produced in a timely manner.  *Burlington Norther & Santa Fe Ry. Co. v. United States*, 408 F.3d 1142, 1147 (9th Cir. 2005).  Rather, the court must make a case-by-case determination, taking into account the following factors:

> the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

*Id*. at 1149.  Plaintiffs believe that asserting a blanket privilege, the refusal to provide a privilege log and the limited scope of documents at issue results in a waiver of the privilege.  Plaintiffs' conclusion lacks consideration of all of the *Burlington* factors.  The circumstances of this litigation do not warrant a waiver based solely on the failure to provide a privilege log.  Plaintiffs have copies of publicly available documents and, as appropriate, will have the opportunity to question Pearce's expert, Salem, regarding Kleinfelder's conclusions and report.

Fifth, Plaintiffs believe the privilege should be deemed waived because Pearce's counsel withheld documents in response to prior document demands.  Plaintiffs claim that Pearce's counsel represented on the record that the February 25, 2010 Site Assessment Report was the only publicly available document.  As Pearce's counsel reportedly "forgot" about an earlier production of publicly available documents, there does not appear to be an intentional withholding of documents requiring waiver of any privilege.

1    <u>Deposition Testimony</u>

2         Plaintiffs seek an order compelling further deposition of Mr. Fink, arguing that it is

3    presumptively improper to instruct a witness not to answer questions during a deposition.

4         Pursuant to the Federal Rules of Civil Procedure, "a person may instruct a deponent not

5    to answer . . . when necessary to preserve a privilege, to enforce a limitation ordered by the court,

6    or to present a motion under Rule 30(d)."  Fed. R. Civ. P. 30(c)(2).

7         Here, Plaintiffs indicate the instructions not to answer relate to questions pertaining to the

8    Site Assessment Report submitted by Kleinfelder to the RWQCB. Plaintiffs argue that the

9    instructions not to answer were improper and outrageous in scope because the questions ranged

10   from Mr. Fink's conclusions stated in the February 2010 report (e.g., Joint Statement, p. 21,

11   Questions 9-10) to foundational questions asking whether Mr. Fink wrote certain sections of the

12   report (e.g., Joint Statement, p. 20, Questions 5-7).  Plaintiffs conclude that Mr. Fink should be

13   instructed to answer questions regarding documents in the public record and that any privilege

14   regarding the underlying information and analysis regarding those records has been waived.

15   Plaintiffs further argue that Mr. Fink is the only person who can answer questions about the Site

16   Assessment Report because he signed it and was in charge of the investigation.

17        To the extent Plaintiffs seek further questioning of Mr. Fink to ascertain information

18   beyond the opinions stated in the Site Assessment Report, they may not do so.  As discussed at

19   the hearing, Plaintiffs are entitled to discover the underlying data utilized by Mr. Fink, but any

20   questioning should be limited to what was stated in the report.  Plaintiffs are not permitted to use

21   Pearce's environmental consultant as an expert witness against Pearce.  Insofar as Plaintiffs seek

22   further questioning of Mr. Fink to ascertain why Kleinfelder was replaced by Salem Engineering,

23   Pearce provided Plaintiffs with an explanation at the hearing.  Given the explanation, any such

24   questions to Mr. Fink would be duplicative.

25        Based on the above, Plaintiffs' request for fees and costs associated with bringing the

26   motion to compel and in re-deposing Mr. Fink at defendant's expense is DENIED.  Federal Rule

27   of Civil Procedure 30(d) permits a court to impose an appropriate sanction, including the

28   reasonable expenses and attorney's fees incurred by any party, on "a person who impedes, delays,

or frustrates the fair examination of a deponent." Fed. R. Civ. P. 30(d)(2).  Courts have awarded fees and costs associated with a motion to compel and imposed re-deposition costs where defense counsel was unjustified in instructing a deponent not to answer.  *See, e.g., Humphreys v. Regents of University of California*, 2006 WL 1140907 (N.D. Cal. Apr. 3, 2006).  In this case, the instructions not to answer were, at least in part, justified as an attempt to protect a privilege. Further, Pearce filed a motion for protective order to limit the scope of questioning.

**B.**     **Motion for Protective Order Re: Kleinfelder**

    **1.**     **Factual Background**

    According to Pearce, he retained Kleinfelder to work with his attorneys in preparing a defense in this litigation.  In 2009, Kleinfelder conducted environmental testing on a property that Pearce last operated twenty-five years ago.  Plaintiffs claim that the RWQCB must give permission to test on the property.

    When Kleinfelder did testing for Pearce, it submitted a work plan to the RWQCB.  The RWQCB required that the results be produced, and Pearce's attorney provided the RWQCB with a copy.  The RWQCB made the results available to the public.

    Pearce asserts that Plaintiffs already have Kleinfelder's public documents, but not documents such as drafts and attorney/expert communications.  Pearce further asserts that Plaintiffs agreed to a "percipient" deposition of Mr. Fink, but the deposition "veered off into an examination of Kleinfelder's expert opinions."  Joint Statement for Protective Order, p. 10.

    **2.**     **Analysis**

    By the instant motion, Pearce seeks a protective order that (1) the Kleinfelder deposition be deemed complete and (2) Plaintiffs be required to return all non-public documents received from Kleinfelder.

    Federal Rule of Civil Procedure 26(c)(1) permits the Court to prohibit or limit discovery in order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense.  There is a heavy burden on the moving party to demonstrate good cause for a protective order and to show why discovery should be denied.  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

1  Pearce argues that Kleinfelder's working files and communications with counsel are trial

2  preparation materials protected by Fed. R. Civ. P. 26(b)(4)(D), which prohibits discovery of facts

3  known or opinions held by a non-testifying expert.  In relevant part, Rule 26(b)(4)(D) provides:

4      Ordinarily, a party may not, by interrogatories or deposition, discover facts known
    or opinions held by an expert who has been retained or specially employed by

5      another party in anticipation of litigation or to prepare for trial and who is not
    expected to be called as a witness at trial. But a party may do so only:

6      . . .
    (ii) on showing exceptional circumstances under which it is impracticable for the

7      party to obtain facts or opinions on the same subject by other means.

8  Fed. R. Civ. P. 26(b)(4)(D).

9  Here, Pearce asserts that Kleinfelder was retained in anticipation of trial, but he does not

10  intend to call Kleinfelder as a witness at trial or to have Kleinfelder prepare an expert report.

11  Pearce contends that there is no showing of "exceptional circumstances" to justify a deposition of

12  Kleinfelder or discovery of documents because Plaintiffs could have done their own testing.  *See,*

13  *e.g., FMC Corp. v. Vendo Co.*, 196 F.Supp.2d 1023, 1046 (E.D. Cal. 2002) (lack of exceptional

14  circumstances where no evidence showed tests could not be replicated by other available

15  experts).  Pearce further indicates that the RWQCB could comprehend the data generated by

16  Kleinfelder, so Plaintiffs' experts also should be able to read and understand it.

17  As discussed above, the Court finds that deposition questioning of Kleinfelder (and any

18  associated document production) be limited.  Questions directed at Mr. Fink should be limited to

19  the opinions stated in the February 2010 Site Assessment report.  As Pearce contends, there is no

20  basis to seek Mr. Fink's thoughts and mental impressions as a non-testifying expert beyond the

21  information stated in the report.  Further, Kleinfelder's production of documents is limited to the

22  data underlying the report.

23  <div align="center">**CONCLUSION**</div>

24  Based on the above, Plaintiffs' motion to compel the deposition and production of

25  documents of Kleinfelder West is GRANTED IN PART and DENIED IN PART.  Pearce's

26  related motion for protective order regarding the deposition of Kleinfelder and production of

27  documents is GRANTED IN PART and DENIED IN PART.

28  IT IS SO ORDERED.

1

Dated:   __July 12, 2011__          _____/s/ **Dennis L. Beck**_____
                                    UNITED STATES MAGISTRATE JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28