**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

ENNS PONTIAC, BUICK, & GMC INC., *et al.*,

Plaintiff,

vs.

ORELIA FLORES, *et al.*,

Defendants.

_____________________________________/

CASE NO. CV-F-07-01043 LJO-BAM

ORDER GRANTING MOTION TO COMPEL FURTHER RESPONSES TO DEPOSITION QUESTIONS (Doc. 344).

Pending before the Court is the parties joint discovery dispute to compel answers to deposition questions. (Doc. 322, 344). The motion was heard on December 2, 2011, before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. The Court heard oral argument from counsel as to the motion to compel answers to depositions questions and the insured/insurer communications privilege. Counsel Jeffery Caufield and Matthew Friedrichs appeared by telephone on behalf of Plaintiff. Counsel Mark Schallert appeared by telephone and Counsel Kathleen Clack appeared in person on behalf of

Defendant John Pearce ("Pearce").[1] Having considered the parties' Joint Statement, the arguments of counsel and the Court's file, the Motion to Compel Answers to Deposition Questions is **GRANTED.**

## FACTUAL BACKGROUND

The underlying dispute involves the alleged release of hazardous solvents used in the dry cleaning industry which created a ground water plume in Reedley, California. Plaintiffs own real property located at 1319 G. Street, Reedley, California ("Property"). Before Plaintiffs gained ownership of the Property, Mabel and Herbert Lee owned and/or operated a dry cleaning business on the Property from approximately the 1940s through the 1970s. Orelia Flores and Sieto Yamaguchi owned and/or operated a dry cleaning business at 1340 G. Street, Reedley, California, across the street from the Property. Plaintiffs filed this environmental contamination action on July 19, 2007, asking for recovery of current and future costs of environmental remediation alleging federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") claims and state law claims for equitable indemnity, negligence, and nuisance.[2] The operative complaint involves claims regarding the source and extent of alleged contamination underlying and/or surrounding properties located on the Property. Defendants contest these allegations and allege that Plaintiffs are liable for contamination of the plume. Cross-claims and counter-claims between various parties have been filed disputing the source and liability for the contamination.

---

1 Although the complaint names the defendant as John "Pierce," his attorney Mark Schallert has referred to him throughout this motion as John R. "Pearce." (Doc. 322, 344). The Court will adopt this spelling for purposes of this motion.

2 Plaintiffs filed a Complaint against Defendants Orelia Flores, Mabel Lee, Michelle Lua, and Sieto Yamaguchi. Doc. 2. On November 7, 2007, Plaintiffs filed a First Amended Complaint (1) substituting Defendant Sieto Yamaghuchi with Defendant The Estate of Sieto Yamaguchi; (2) deleting Defendant Michelle Lua; and (3) adding Defendants the Estate of Herbert Lee, Reedley Steam Laundry, Reedley Dry Cleaning Works, John Pierce, Patty Martinez, and Louie Martinez. (Doc. 13.) A memorandum decision dated April 20, 2011 granted Plaintiffs' motion to amend the FAC to name the administrators of the estates of three Defendants: Sachiko Yamaguchi for the Estate of Sieto Yamaguchi and the Lee Administrators for the Estate of Mabel Lee and Estate of Herbert Lee. (Doc. 146.)

On June 3, 2011, counsel for Pearce took the deposition of Plaintiff Earl Enns, the corporate designee of Enns Pontiac, Buick & GMC Truck. (Doc. 347, Ex. A, Notice of Taking Deposition). During the deposition, Pearce's counsel, Mark Schallert, asked questions regarding insurance coverage. When the issue of insurance coverage was broached, Plaintiff's counsel, Jeffrey Caufield, instructed Enns not to answer, stating that "any communications with insurance carriers [is] privileged" under the insurer/insured privilege. (Doc. 347, Ex. B. Depo Trans. at 60:9-14).

There are three deposition questions which are at issue:

**QUESTION 1:**

**[Q]:** I'm asking whether any of your insurance companies and carriers have agreed to pay any portion of the clean-up cost or of the costs of litigation?

**Mr. Caufield:** Same instruction.

**Mr. Schallert:** Instruct you not to answer, right?

**Mr. Caufield:** Um-hum. Again you can ask him whether there has been communication, I will allow that, but you are not going into the substance of the communications now. (Decl. Of Mark Schallert, Ex. B. at 62:24-63:8).

**QUESTION 2:**

**[Q]:** Is the insurance paying for your counsel?

**Mr. Caufield:** Again, instruction not to answer. Asked and answered. *(Id.* at 77:21-24)

**QUESTION 3:**

**[Q]:** But the insurance companies that said that they don't handle gas tanks, you have had success in having an insurance company provide some form of defense or payments to you relating to 1391[sic], is that correct?

**Mr. Caufield:** Objection. Instruction not to answer regarding the substance of communications with insurance carriers.

**Mr. Schallert:** I actually think I'm able to find out the insurance situation he's got. I phrased it not to get to the nature of communications, but that's okay. We are not going to

> resolve it here, so I am going to stop, offering a motion to compel...(*Id.* at 87: 1-12)

Pearce, the moving party, argues that his three questions merely tried to ascertain the scope of coverage and do not fall within the insured/insurer privilege. In response, Enns contends that the questions fall within the protections for privileged communications between counsel for the insured and the carrier. On November 21, 2011, the parties lodged their Joint Statement Discovery Disagreement and accompanying exhibits. (Doc. 344).

**APPLICABILITY OF FEDERAL LAW TO CLAIMS OF PRIVILEGE**

This Court's subject matter jurisdiction is based on a federal question and therefore federal law governs disposition of the discovery issues presented by the present motions. *See* FED. R. EVID 501 (federal law governs the availability and scope privilege in non-diversity actions); *see also United States v. Zolin*, 491 U.S. 554, 562 (1989); *Great American Surplus Lines, Inc v. Ace Oil Co.*, (E.D.Cal. 1988). Federal law applies to privilege based discovery disputes involving federal claims, even if allied with pendent state law claims. *See, e.g., Pagano v. Oroville Hospital*, 145 F.R.D. 683, 687 (E.D.Cal. 1993); *Martinez v. City of Stockton*, 132 F.R.D. 677, 681-83 (E.D. Cal. 1990). Privileges are narrowly construed, because they impede the full and fair discovery of the truth. *Eureka Financial Corp. v. Hartford Acc. and Indemnity Co.*, 136 F.R.D. 179, 183 (E.D. Cal. 1991).

Federal Rule of Civil Procedure 26(b) establishes the scope of discovery and states in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identify and location of person who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.
> FED. R. CIV. P. 26(b)(1).

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998).

**INSURED/INSURER COMMUNICATIONS PRIVILEGE**

Both parties assert that California Code of Civil Procedure 2017.210 governs the scope of the insured/insurer privilege in this case. Section 2017.210, added in 1987, states in pertinent part:

> This discovery may include the identity of the carrier and the nature and limits of the coverage. A party may also obtain discovery as to whether that insurance carrier is disputing the agreement's coverage of the claim involved in the action, but not as to the nature and substance of that dispute. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial.

A federal court is not bound to recognize state privileges in federal question cases. *Garrett v. City & County of San Francisco*, 818 F.2d 1515, 1519, fn. 6 (9th Cir. 1987) (personnel files discoverable in federal civil rights action despite claims of privilege under state law). Where federal and state law claims are joined in the same action, claims of privilege are determined under federal law. It would be "unworkable" to hold information privileged for one set of claims and not the other. *Agster v. Maricopa County,* 422 F.3d 836, 839 (9th Cir. 2005).

Relying on *Lectrolarm v. Pelco*, Plaintiff Enns asserts the insured/insurer communication privilege in refusing to answer questions at its deposition. 212 F.RD. 567 (E.D. Cal. 2002). According to Enns, the "communications" information sought by Pearce seeks communications between Enns and its insurance carriers, information protected by "the common interest doctrine." Enns also contends that even if the communications sought by Pearce are not privileged, Pearce is not entitled to reopen the deposition for information Pearce already has. Pearce received a copy of the insurance policy during initial disclosures and was notified that the insurance carrier is defending under a reservation of rights. (Doc. 344 at 22). Therefore, according to Enns, the answers to the deposition questions have already been provided. The Court disagrees with Enns' position for three reasons.

First, Enns' use of the insured/insurer privilege during the deposition is misplaced. The "insured/insurer privilege" is not a privilege that could be used in this case to avoid answering deposition questions. Second, the questions asked by Pearce do not seek information that is otherwise privileged. Third, although Pearce is now aware that the insurance carrier is defending under a reservation of rights, Pearce is still entitled to an opportunity to fully develop deposition testimony for later use at trial.

**A. The Common Interest Doctrine and the Insurer/Insured Relationship in Discovery**

Federal courts have never recognized a blanket privilege regarding insured/insurer communications. *See Linde Thoms Langworthy Kohn & Van Dyke, P.C. v. RTC*, 303 U.S. App. D.C. 316, 5 F.3d 1508, 1514-1515 (D.C.Cir. 1993); *see also Imperial Corporation of America v. Shields*, 167 F.R.D. 447, 451 (S.D.Cal. 1995) (a limited common interest exists between an insured and an insurer paying for *Cumis* counsel). When the insurer defends under a reservation of rights, denying the duty to indemnify on some or all claims, the communications between the insured and the carrier are not privileged per se." *Lectrolarm*, 212 F.R.D. at 572.

At the deposition, Enns' counsel instructed Enns not to answer questions based on the insured/insurer privilege found in *Lectrolarm*. In *Lectrolarm,* the Eastern District of California (per Judge Beck) thoughtfully examined whether a third party plaintiff was entitled to any privileged information that was later shared with the defendant's general liability insurer. 212 F.R.D. at 568. The court found that not all privileges were waived when the insured voluntarily provided information to its insurer that was paying for *Cumis* counsel.[3] *Id.* at 572. (the common-interest doctrine is an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party.). The existence of a common interest defense allows the parties and counsel allied in that defense to disclose privileged information to each other without destroying the privileged nature of those communications. *Id.*

Pelco, the insured, was being sued by the plaintiff, Lectrolarm, for unfair competition and trademark infringement. *Id.* Pelco's insurer issued a reservation of rights letter, but was paying for *Cumis* counsel under its duty to defend. *Id.* at 570. After extensive discovery in the case, Lectrolarm submitted a broad discovery request to Pelco and Pelco's liability insurer. *Id.* The discovery request demanded all documentation that had been exchanged between the two parties. *Id.* at 568-569.

---

3 The term "Cumis counsel" derives from the holding of *San Diego Navy Federal Credit Union v. Cumis Ins.*, 162 Cal.App.3d 358, 208 Cal.Rptr. 494 (1984), which recognized the insurer's duty to appoint independent counsel for its insured under certain circumstances. The Legislature codified that duty in 1987 by enacting section 2860. Stats.1987, ch. 1498, § 4, p. 5779; *Long v. Century Indemnity*, 163 Cal.App.4th 1460, 1470, n. 6, 78 Cal.Rptr.3d 483 (2008).

The Court held that Pelco could not be compelled to disclose the privileged information to Lectrolarm because the discovery request was too broad. *Id.* at 570. Specifically, the court stated that the discovery request was unreasonable and "propounded for the improper purpose of harassment." *Id.* The court also found that even if the discovery request had been reasonable, Pelco had not waived any privilege by sharing information with its insurer because Pelco and the insurer had a common interest. The court said the insured/insurer privilege had no application in the federal action, but refused to prevent discovery based on a common interest defense privilege. *Id.* at 572. In holding that the insured and insurer had a common interest, the court found that the communications between Pelco and its insurer were not "privileged per se." *Id.*

As seen in *Lectrolarm*, the insured/insurer privilege is not applied in federal court. When an insurance carrier is defending the underlying lawsuit under a reservation of rights, the insured and its carrier share a "common interest" and therefore disclosures of privileged information between the two would not waive an existing privilege. *Id.* (notwithstanding that communication between Pelco and Fireman's Fund is not in and of itself privileged, the Court finds that as to the underlying lawsuit, there is a "common interest" between Pelco and Fireman's Fund and therefore disclosure of privileged information by Pelco to Fireman's Fund does not waive the attorney client privilege or the work product doctrine).

As in *Lectrolarm*, Enns' insurer is defending under a reservation of rights and thus there is a "common interest" between Enns and its insurer. However, for Enns' deposition answers to be protected, the communication's must have been protected by some other privilege in the first instance.

**B. Pearce's Questions Do Not Seek Privileged Communications**

Generally, the determination of whether a privilege attaches to an insured/insurer communication turns on the nature and purpose of the communication. *Linde*, 5 F.3d at 1515. Enns contends that the communications sought by Pearce should be disallowed like the privileged communications in *Lectrolarm*. However, the privileged communications sought in *Lectrolarm* are readily distinguishable from the communications sought in this case.

In *Lectrolarm*, the Court was confronted with a situation where a litigant was attempting to obtain *all* of the communications between its opposing party, and that opposing party's insurer. *Lectrolarm,* 212 F.R.D. at 569-70. There, the party issued a subpoena intended expressly to discover confidential communications from the insureds' *Cumis* counsel. The Court noted that Pelco had communicated with its carrier and their attorneys concerning any number of things including but not limited to Lectrolarm's claims, the facts disclosed by discovery, Pelco's potential liability, probability of success, possible range of damages, etc. *Id.* at 570. The Court found that the requested documents reflected candid analysis of the factual and legal issues in the case as well as the risk of exposure presented by Lectrolarm's claims and thus the common interest doctrine applied to protect at least those communications between Pelco and its insurance carrier as it related to the claims and defenses in the underlying lawsuit. *Id.* at 572.

Unlike in *Lectrolarm*, the information sought by Pearce does not seek the substance of communications between Enns and its carrier. Here, Pearce's inquires into whether Enns' insurer had paid any or all of the remediation costs (Question One), or paid legal fees (Question Two), or secured any type of coverage (Question Three), were appropriate discovery. The questions are specific, narrow, and seek the existence and extent of the insurance being provided and not the bases of disagreements over coverage of counsel's confidential assessments or the substance of the communications with respect to the underlying lawsuit.

At the hearing, Enns explained his theory that the true motive for Pearce's questions was to root out information related to experts. Enns claims that Pearce's questions are directed at discovering the identity of Enns' retained experts and their associated costs. Enns's showing is insufficient. It is axiomatic that the questions asked by Pearce do not mention anything about the type of experts, the cost of experts, or expert communications. Nor were the questions designed to uncover the details surrounding the coverage dispute between Enns and its carrier. All of Pearce's questions could have been answered "yes" or "no"; they did not ask for contents of communications between Enns and its carrier regarding the coverage dispute. Thus, the Court finds that none of the questions sought the type of communications protected by the common interest privilege.

**C. Pearce May Reopen the Deposition and is Not Entitled to Sanctions**

Enns argues that even if the communications sought by Pearce are not privileged, Pearce's motion is futile because Enn's has already provided the information sought by Pearce. Enns claims it provided the Pearce parties with:

> Copies of ALL insurance policies that could be located, which lists the name of the insurer, dates of coverage, types of coverage, and coverage limits. As a result, the Enns' parties have fully complied with their FRCP Rule 26 obligations, if any, pursuant to CCP Section 2017.210. (Friedrichs Dec. at 2, 3, Exs.1, 2)
>
> The information that certain carriers are defending certain claims and/or defenses under a reservation of rights and that Caufield & James LLP is a Civil Code Section 2860 "Cumis" counsel for the Enns parties. Again, we have previously disclosed that a coverage "dispute" exists but not the "nature or substance of that dispute." (Friedrichs Decl. at 2, 3, Exs. 1, 2)

According to Enns, Pearce's counsel might be entitled to find out whether a dispute exists, but not the details of the dispute, information that Pearce already has. In response, Pearce claims that it still does not know the extent of coverage being afforded and what remediation costs and other expenses are being paid by insurance.

Deposition testimony is evidence that can be contradicted and used for impeachment purposes. Having the coverage question answered during a deposition is relevant if for potential impeachment purposes alone. Further, as discussed above, the common interest privilege is narrow. Pearce is entitled to ask questions regarding the insured/insurer relationship as long as the questions do not run afoul of the established privileges. Because Pearce suspended the deposition, he was unable to discover the existence and scope of insurance coverage and lay the proper foundation for questions regarding damages and out-of-pocket expenses. Joint Motion at 7.

Pearce also seeks $100 in sanctions for over twenty hours of work related to this motion as a warning to Enns that it should have conceded this issue when presented with the relevant authority during the meet and confer process. Sanctions will not be imposed at this juncture. The parties had a meaningful dispute as to the existence and scope of the insured/insurer privilege and the Court finds that there was nothing improper or sanctionable in that dispute.

**D. Scope of Discovery**

The Court notes that while this order deals with the specific questions at issue, the principles apply to related questions dealing with communications between Enns' and its insurer that would fall outside of the "common interest" doctrine. For instance, questions related to remediation costs and other expenses being paid by insurance relate to the existence of coverage and the amount of coverage and would not be protected. Other acceptable questions may relate to whether the insurer has (1) denied all coverage obligations, (2) issued a reservation of rights providing for defense but not for the cost of cleanup, or (3) agreed to pay for the costs of defense as well as any potential damages awarded. The Court hopes this decision will provide guidance and constrain future objections.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the motion to compel answers to deposition questions. Plaintiff Enns SHALL appear for a further deposition at a mutually agreeable time and date before the discovery cut-off deadline. Defendant's request for sanctions is DENIED.

IT IS SO ORDERED.

**Dated:** **December 9, 2011** /s/ **Barbara A. McAuliffe**
UNITED STATES MAGISTRATE JUDGE