UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENNS PONTIAC, BUICK, & GMC TRUCK, *et al*.;<br><br>            Plaintiffs,<br><br>    v.<br><br>ORELIA FLORES, *et al*.;<br><br>            Defendants,<br>_____/<br>AND RELATED ACTIONS | Case No. 1:07-cv-1043-LJO-BAM<br><br>**FINDINGS AND RECOMMENDATIONS APPROVING SETTLEMENT AGREEMENT AND DISMISSING CASE WITH PREJUDICE**<br><br>**(Doc. 424)** |

**INTRODUCTION**

In this Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") action, Plaintiffs/Counter-Defendants[1] and Defendants/Counter-Claimants[2] jointly move for good faith settlement determination pursuant to California Code of Civil Procedure Section 877.6. (Doc. 424). On August 7, 2014, the Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for August 15, 2014.

---

[1] Plaintiffs consist of Enns Pontiac, Buick, & GMC Truck, Earl L. Enns and Esther J. Enns; Harold J. Enns and Patricia L. Enns (collectively "Enns" or "Plaintiffs").

[2] Defendants consist of John Pearce, Louis and Patsy Martinez, Patricia Clothier and Carolyn Whitesides, as Administrators to the Estate of Mabel Lee, the Estate of Mabel Lee, Deceased, Reedley Steam Laundry, and Reedley Dry Cleaning Works, and Sachiko Yamaguchi, as administrator to the Estate of Sieto Yamaguchi, and the Estate of Sieto Yamaguchi, deceased (collectively, "Defendants").

1

(Doc. 429). Having reviewed the motion as well as the supporting documentation, this Court recommends the Motion for Good Faith Settlement Determination be GRANTED.

## BACKGROUND

Pursuant to Plaintiffs' Second Amended Complaint ("SAC"), Plaintiffs own real property located at 1319 G. Street, Reedley, California ("Site"). SAC at ¶ 4, Doc 154. Prior to Plaintiffs taking ownership of 1319 G. Street, Mabel and Herbert Lee owned and/or operated a dry cleaning business at that location from approximately the 1940s through the 1970s. SAC at ¶ 4. Orelia Florez and Sieto Yamaguchi owned and/or operated real property at 1340 G. Street, Reedley, California, which is across the street from Plaintiff's Site. SAC at ¶ 4. Finally, John Pearce and Patty and Louie Martinez "each owned and/or operated real property across the street from Plaintiffs' Site." SAC at ¶ 4.

The instant action concerns remediation of hazardous substance contamination of the soil and groundwater underlying and/or surrounding the properties located on G Street in Reedley, California. The SAC alleges that the properties either currently or previously owned by Defendants caused Plaintiffs' Site environmental contamination. SAC at ¶ 3. Plaintiffs specifically allege that Pearce, Yamaguchi, Lee, and Martinez released volatile organic compounds on or around the Sites due to their operation of various businesses. SAC at ¶¶ 36-38, Doc. 154. Plaintiffs further allege it has incurred past costs related to sampling its Site and that it will incur future costs of response related to Defendants' prior operations. SAC at ¶¶ 39, 42. Defendants denied any liability for the alleged environmental contamination beneath the Site and disputed Plaintiffs' allegations regarding the source and cause of the contamination as well as the extent of response costs alleged. In their counter-claims, Defendants contend that the contamination beneath the Site originated from offsite sources and/or preexisted Defendants' tenancy and operations. Defendants further assert that Enns has substantial liability arising from the ownership of the Site(s) and releases from operations of those Sites. (Doc. 424 at 5).

Plaintiffs filed suit on July 19, 2007. Over the course of approximately six (6) years, the parties engaged in vigorous litigation including extensive discovery and dispositive and non-dispositive motion practice. In conducting expert discovery, the parties retained two separate experts to determine the source and nature of the alleged contamination and the resulting estimated cost of

2

clean-up and remediation of the Site. Enns' expert, Wade Allmon, estimated that the costs of remediation and monitoring would total somewhere between $2.6 million and $3.8 million. Caufield Decl. at p. 3, Doc. 424-5. Pearce's expert, Bruce Myers, estimated that the costs of remediation and monitoring would total approximately $1.4 million. Caufield Decl. at p. 2, Doc. 424-4.

On September 19, 2012, the parties participated in the first of three mediations before JAMS mediator, Lester Levy, with other mediation sessions occurring on June 4, 2013, and January 24, 2014. After the three lengthy negotiations led by Mr. Levy, the parties entered into a settlement agreement which, among other things, required the parties to collectively pay $3.1 million into the "Reedley Environmental Remediation Trust as either a 'Designated Settlement Fund or a 'Qualified Settlement Fund.'" Caufield Decl. Ex. A at 5, Doc. 424-3. The parties now jointly move for a determination that the collective settlement agreement was entered into in good faith pursuant to California Code of Civil Procedure § 877.6.

**DISCUSSION**

**A.      Legal Standard**

A motion for good faith settlement is governed by California Code of Civil Procedure §§ 877 and 877.6, both which apply to federal court proceedings and authorize the Court to determine whether a settlement agreement was entered into in good faith. *See Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355 (9th Cir. 1993) (en banc). A court has discretion to determine that a settlement is in good faith pursuant to California Code of Civil Procedure Section 877. *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1064 (9th Cir. 2011). The good faith provision of section 877 mandates that the courts review agreements purportedly made under its aegis to insure that such settlements appropriately balance the contribution statute's dual objectives. *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488 (Cal. 1985). The good faith provision further provides that when a settlement is determined by a court to have been made in good faith, the settlement "bar[s] any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. Proc. Code § 877.6(C). The party applying for a good faith settlement determination is required to give notice of its application to all

other parties and to the court. Cal. Civ. Proc. Code § 877.6(a). "A settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given notice and an opportunity to be heard." *Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1273 (Cal. App. 2d Dist. 2006).

To determine whether a settlement was entered into in good faith, Courts consider the *Tech-Bilt* factors which include:(1) a rough approximation of plaintiff's total recovery and the settler's proportionate liability; (2) the amount paid in settlement; (3) a recognition that a settler should pay less in settlement than if found liable after trial; (4) the allocation of the settlement proceeds; (5) the settling party's financial condition and the availability of insurance; and (6) evidence of any collusion, fraud or tortious conduct between the settler and the plaintiff aimed at requiring the non-settling parties to pay more than their fair share. *Tech-Bilt, Inc.*, 38 Cal.3d at 499. "Once there is a showing made by the settlor of the settlement, the burden of proof on the issue of good faith shifts to the nonsettlor who asserts that the settlement was not made in good faith." *City of Grand Terrace v. Superior Court*, 192 Cal. App. 3d 1251, 1261 (1987). A party opposing the settlement agreement "must demonstrate . . . that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt, Inc.*, 38 Cal.3d at 499-500.

### B. Terms of the Settlement

Pursuant to the Settlement Agreement, all parties agree to the following material terms of the settlement agreement:

1. Enns shall pay to the Reedley Environmental Remediation Trust the total sum of $2,000,000 in exchange for a dismissal with prejudice of all actions by Parties against Enns;

2. Pearce shall pay to the Reedley Environmental Remediation Trust the total sum of $1,000,000 in exchange for a dismissal with prejudice of all actions by Parties against Pearce;

3. The Lees shall pay to the Reedley Environmental Remediation Trust the total sum of $100,000 in exchange for a dismissal with prejudice of all actions by Parties against Lees;

4. The Martinezes shall pay to the Reedley Environmental Remediation Trust the total sum of $0 in exchange for a dismissal with prejudice of all actions by Parties against Martinezes;

5. Yamaguchi shall assign all rights to the Installment Note dated August 31, 2006 and signed by Michelle Lua, with a face value of $140,000 ("Note"), to the Reedley Environmental Remediation Trust in exchange for a dismissal with prejudice of all actions by Parties against Yamaguchi.

6. All parties agree that all claims for contribution or indemnity arising from or related to the subject matter of this litigation are barred as against Parties, and their insurers, in their capacities as such, under CERCLA and CCP § 877, *et seq*;

7. The settlement resolves all claims between all remaining parties to this case with prejudice.

Caufield Decl. at p. 3, Doc. 424-3.

## ANALYSIS

The Court has reviewed the parties' joint motion for good faith settlement, its supporting declarations, the *Tech-Bilt* factors, and the lack of opposition. The Court finds that the settlement between all parties was reached in good faith under California Code of Civil Procedure section 877.6. The settlement was the result of arm's length negotiations under the oversight of a Mediator, and furthers the goals under CERCLA. *See United States v. Montrose Chem. Corp.*, 50 F.3d 741, 748 (9th Cir. 1995) (noting "CERCLA's primary goal of encouraging early settlement"); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("it is the policy of [CERCLA] to encourage settlements."). Additionally, all parties stipulated to the motion and agreed to the accompanying settlement amounts. The motion was filed on June 26, 2014, and the parties have now had ample opportunity to perform a complete analysis of the settlement agreement and express any objections or opposition. To date, no party has filed objections. Indeed, the joint motion is unopposed, and no party has demonstrated that the settlement agreement is unreasonable or inconsistent with the equitable objectives of Section 877.6. Accordingly, as further detailed below, the Court finds that the parties join settlement is in good faith.

A.   **Proportionate Liability**

One of the most important *Tech-Bilt* factors is the proportion of liability, and where "there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability, then determination of good faith upon such assumption is an abuse of discretion *Toyota Motor Sales U.S.A., Inc. v. Super. Ct.*, 220 Cal. App. 3d 864, 871 (1990). A "settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the . . . liability to be." *Torres v. Union Pac. R. R. Co*., 157 Cal. App. 3d 499, 508 (1984).

The parties have agreed to pay a total of $3,100,000 to settle all claims in this matter which is consistent with the rough approximation of the parties' proportionate liability. Pearce and Enns retained experts to conduct an environmental site assessment and determine the cost to contain, clean-up, and long-term monitor the soil and ground water impacted by the hazardous substances at the G Street properties. The range of the total cost of a remediation plan estimated by the experts ranged from $1.4 million to $3.8 million. The $1.4 million cost estimate was a best-case scenario while $3.8 million was an estimated worst-case scenario. (Doc. 424 at 10). The $3.1 million the parties have agreed to pay into an environmental remediation trust falls within the range of $1.4 to $3.8 million estimated costs for remediation of the sites as estimated by the environmental experts. Caufield Decl. at ¶ 5-6, Exs. B-C. Accordingly, the Court finds that the settlement amount and the related material terms of the settlement agreement set out in the parties' motion is fair and within the reasonable range of the parties' proportionate share of comparative liability.

B.   **Settlement Amount**

Given the risk, expense, complexity, and duration of further litigation in this complex environmental case, the Court finds that the settlement amount is less than the amount the parties may have paid had they been found liable. *Tech-Bilt, Inc.*, 38 Cal. 3d at 499.

C.   **The Financial Conditions of the Parties and Insurance Policy Limits**

There are no disputes regarding the parties' financial condition and insurance policy limits. Here, only two parties, Enns and Pearce, had insurance policies that provided coverage. Caufield Decl. at ¶ 7. Through the assistance of a neutral mediator, Enns' and Pearce's insurance carriers agreed to

6

pay $3 million of the total settlement. The remaining $100,000 will be paid by the Lees. In addition to the money provided by the insurance carriers and the Lees, Yamaguchi is assigning all rights to an Installment Note dated August 31, 2006 to the Environmental Remediation Trust which is worth approximately $140,000.

The parties agreed to the individual settlement amounts through the assistance of a neutral mediator after arm's-length negotiations. Each amount also takes into consideration that beyond the agreed upon amounts the "parties have little to no assets to contribute toward any settlement in this case." (Doc. 424 at 11). Therefore, any ability of the parties to pay a larger amount has been balanced against the facts of the case and the degree to which each party is liable. Considering the total policy limits and financial condition of the parties, the Court finds this factor does not weigh against finding that the parties have entered into a good faith settlement.

### D. Evidence of Collusion, Fraud, or Tortious Conduct

Finally, there is no evidence of collusion, fraud, or tortious conduct aimed to injure the interests of the other parties. *Tech-Bilt* instructs that courts are to consider the existence or absence of any collusion, fraud or tortious conduct aimed to injure the interests of any non-settling defendants. Significantly here, all parties agreed to settle the case subsequent to three full days of mediations with mediator Levy. Caufield Decl. at ¶ 3. With guidance and oversight from the mediator, the settlement concluded with all parties. Further, no opposition to the motion has been filed.

In sum, application of the *Tech-Bilt* factors weighs in favor of granting the parties motion for a determination of good faith settlement. Accordingly, pursuant to Section 877.6, this Court recommends that the parties' settlement agreement is in good faith.

/////
/////
/////
/////
/////
/////

**CONCLUSION AND RECOMMENDATIONS**

For the reasons discussed above, this Court **RECOMMENDS** that:

1. Plaintiffs' and Defendants' Joint Motion for Good Faith Settlement Determination, submitted jointly by Plaintiffs/Counter-Defendants Enns Pontiac, Buick, & GMC Truck, Earl L. Enns and Esther J. Enns; and Harold J. Enns and Patricia L. Enns and Defendants/Counter-Claimants, John R. and Charlene Pearce, individually, and dba Pearce Cleaners, Louie and Patsy Martinez, Patricia Clothier and Carolyn Whitesides, individually, and as administrators to the Estate of Mabel Lee, Reedley Steam Laundry, and Reedley Dry Cleaning Works, and The Estate of Sieto Yamaguchi, Deceased, and Sachiko Yamaguchi, deceased, as former administrator of the Estate of Sieto Yamaguchi, by and through Dana and Constance Yamaguchi as administrators to the Estate of Sieto Yamaguchi, should be **GRANTED** as entered into in good faith within the meaning of California Code of Civil Procedure section 877.6, and therefore any and all claims for contribution or indemnity arising from or related to the subject matter of this litigation are therefore barred as against all parties named in the action. (Doc. 424-7 at 1);

2. The Reedley Environmental Remediation Trust shall be established and operate consistent with the terms of the settlement agreement which provides for operation pursuant to Section 468B of the Internal Revenue Code, 26 U.S.C. § 468B, *et seq*., codified at 26 C.F.R. § 1.468B, and in accordance with the terms and conditions of the Declaration of Trust for the Reedley Environmental Remediation Trust;

3. All claims and counterclaims asserted by any and all parties in this Action should be **DISMISSED** with prejudice. Plaintiff and Defendants shall each bear their own attorneys' fees and costs against each other.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fifteen (15) days after being served with these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __August 29, 2014__         /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE